ALFRED EUGENE FAUGHT, by Next Friend, GEORGE FAUGHT, Appellant, v. WILLIAM WARNER WASHAM, Respondent, No. 44874—291 S. W. (2d) 78.

Division Two, June 11, 1956.

*Errol Joyce* and *Hess & Collins* for appellant.

*Nolan M. Chapman, Don Chapman* and *Nolan M. Chapman, Jr.,* for respondent.

1024

[80] STORCKMAN, J.—This is a suit for damages in the sum of $50,000 for personal injuries which plaintiff alleges he suffered when an automobile operated by the defendant collided with plaintiff's automobile which was on a public highway in a damaged and disabled

1026

condition. The case was tried and submitted on the theory of humani-
tarian doctrine negligence. The verdict was for the defendant and
the plaintiff has appealed from an adverse judgment.

The accident occurred October 15, 1953 at about 1:45 a.m. on a
bridge over the East Fork of the Chariton River at a point on U. S.
Highway 36 about 2.7 miles west of Macon, Missouri. The bridge,
365 feet long, had side railings made of two inch iron pipe. From the
east end of the bridge, guardrails 40 feet in length angled out onto
the shoulders. The highway and floor of the bridge were 20 feet
wide and made of concrete. East of the bridge the highway ran
straight for about 1800 feet to the top of a hill about 53 feet higher
than the elevation at the bridge site. For about 350 feet east of the
east end of the bridge the highway was practically level. The night
was dark and clear and the pavement dry.

The plaintiff, a young man 21 years of age at the time of the trial,
had spent the evening with friends in and around Macon. He testified
that he had one bottle of beer during that time. Shortly before the
accident he left Macon alone driving west on U. S. Highway 36.
His automobile was a 1941 Mercury of a dark green or olive drab color
with white sidewall tires. As he approached the East Fork Bridge
he dozed off to sleep and his car veered to the left and struck the guard-
rail and bridge railing on the south side of the highway. It was
traveling between sixty and sixty-five miles per hour at the time and,
in addition to the guardrail, plaintiff's automobile tore down 105
feet of the bridge railing and came to rest crosswise of the highway on
the bridge with the plaintiff inside. All of the automobile's lights
were extinguished by the collision. The front end of the damaged and
disabled car was headed generally south and the rear end of the car
was close to the north railing of the bridge.

The plaintiff testified that he received no injuries as a result of his
car striking the guardrail and bridge railing, but as he was getting
out, his automobile was struck on the left front side by the right rear
portion of defendant's car and that he, the [81] plaintiff, then
received serious injuries, principally to his right foot and leg.

The defendant was returning from St. Louis to his home in Mar-
celine, Missouri. His automobile, which he was driving, was a 1953
Buick Roadmaster four-door sedan equipped with power brakes. With
him in the car were four women including his wife and her mother and
a Miss Wycoff who was killed in the accident. After stopping at a
filling station in Macon the defendant drove west on U. S. Highway 36.
As he approached the East Fork Bridge he was driving about sixty to
sixty-five miles per hour with his headlights on "high" or "bright."
When he saw plaintiff's wrecked automobile on the bridge, defendant
applied his brakes and swerved to the left to avoid striking it, with
the result that his automobile fell from the bridge and came to rest on
its left side headed west at a point about even with and south of the

Mercury and with its headlights still burning. Defendant testified he did not think the Buick struck the Mercury before it left the bridge, although his answer admitted a paragraph of plaintiff's petition containing an allegation that "defendant's 1953 Buick automobile collided with plaintiff's 1941 Mercury automobile."

Other necessary details of the evidence will be given in connection with our consideration of the questions preserved for review.

■ Plaintiff first complains of the giving of Instruction No. 5 which reads as follows: "The Court instructs the jury that *the defendant had a right to assume, in the absence of notice to the contrary, that plaintiff's automobile, would not be stopped on the public highway, in the night time, that is, a half an hour after sunset and a half an hour before sunrise, to-wit: about 2 o'clock A.M., without a red light on the rear thereof plainly visible from a distance of five hundred feet to the rear, if you find it was so stopped on said public highway and without a red light on the rear thereof;* and the Court further instructs you that there was no duty on the part of defendant, William Warner Washam, to stop, or change the course of his automobile until he saw, or, in the exercise of the highest degree of care, could have seen that plaintiff's automobile was *so stopped* upon said public highway and that plaintiff was in imminent peril of being injured, if so; and the Court further instructs you, that if you find and believe from the evidence, that the defendant did not see and in the exercise of the highest degree of care could not have seen the perilous position of the plaintiff, if any, until the automobile of the defendant, William Warner Washam, was so close to the automobile of plaintiff *so stopped* on said highway, that the automobile of the defendant could not, by the exercise of the highest degree of care, with the brakes and apliances at hand on defendant's automobile and with safety to defendant and the other occupants of his automobile, besstopped, or the course thereof changed, in time for defendant to avoid striking *defendant's* automobile, then your verdict must be for the defendant."

Emphasis in the above-quoted instruction has been supplied, as will be all other italics within quotations unless otherwise noted.

The first part of this instruction in effect tells the jury that the defendant discharges his duty to keep a lookout if he looks with such care that he will be able to discover automobiles that have taillights complying with statutory requirements, and further gives the impression that the plaintiff can be charged with antecedent and contributory negligence if there is not such a rear light on plaintiff's automobile. We have concluded that the instruction is prejudicially erroneous in that it misstates the applicable law and is otherwise misleading.

■ The humanitarian rule in Missouri has been extended to discoverable as well as discovered peril at places and under circumstances where there is a duty on the operator of the instrumentality to keep a lookout. In Mayfield. v. Kansas City Southern Ry. Co., 337 Mo.

1028

79, 85 S.W.2d 116, 123 [6], these pertinent rules of law are stated: "It is prejudicial error, in an instruction submitting humanitarian negligence, [82] to inject therein primary negligence of the defendant or contributory negligence of the plaintiff; to require consideration of any antecedent negligence of either plaintiff or defendant which existed prior to the time that the humanitarian doctrine properly commenced to operate; or to *predicate recovery upon any different facts than those which actually existed at the time the peril arose and* was discovered, or, *if there was a duty to keep a lookout, when it was discoverable by the exercise of the required degree of care.*"

The rule as to whether defendant was required to keep a lookout and, if so, the degree of care required is also stated in the Mayfield case as follows, 85 S.W.2d 116, 123-124: "In the case of automobiles operating upon public streets and highways, the operator has imposed upon him the *continuous* statutory duty to exercise the highest degree of care at all times and all places thereon to keep a lookout for persons thereon and in every other respect." See also Frandeka v. St. Louis Public Service Co., 361 Mo. 245, 234 S.W.2d 540, 548 [15], and Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935, 937-938 [2]. It is a statutory duty. § 304.010, RSMo 1949, V.A.M.S., Anderson v. Prugh, 364 Mo. 557, 264 S.W.2d 358, 364.

The kind of watch required is further described in Chenoweth v. McBurney, 359 Mo. 890, 224 S.W.2d 114, 118 [8] as follows: "It was the duty of defendant to keep a careful watch ahead for other vehicles on the highway; and to fulfill this duty he was required to look in such an observant manner as to enable him to see what a person in the exercise of the highest degree of care for the safety of himself and others would be expected to see under similar circumstances."

Is this positive statutory duty satisfied by the charge in the instruction "that the defendant had the right to assume, in the absence of notice to the contrary, that plaintiff's automobile, would not be stopped on the public highway, in the night time" without a red light thereon plainly visible from a distance of five hundred feet to the rear? We do not think so. An instruction approving a lookout for automobiles stopped on the highway with a "red light on the rear thereof plainly visible from a distance of five hundred feet to the rear" suggests and permits the exercise of ordinary care or something less than the minimum standard of the highest degree of care and the *continuous* lookout required of operators of motor vehicles. Such a direction to the jury is erroneous and misleading.

As heretofore indicated, the humanitarian rule operates upon the facts as they actually existed at the time the peril arose and was discoverable in the exercise of the highest degree of care. The absence of lights on the wrecked car, in proper perspective, is but one of the evidentiary facts going to the question of when plaintiff's position of peril was discoverable. It is one of several factors affecting the visi-

bility of the automobile. As used in the instruction, it savored of a charge of antecedent or contributory negligence not available in a humanitarian case. Since it was likely to be so understood by the jury, it was also erroneous for this reason. Klecka v. Gropp, Mo., 278 S.W.2d 790, 795; Catanzaro v. McKay, Mo., 277 S.W.2d 566, 570; Wolfson v. Cohen, Mo., 55 S.W.2d 677, 680 [8].

The instruction, in the particular complained of, was not sufficiently related to the time when defendant was obliged to take action to avoid injuring the plaintiff to justify the treatment it received. The overemphasis of this evidentiary fact gave it the status of a controlling rule of law.

■ The use of these "entitled to assume" instructions have been criticized and condemned. In Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562, 571, this court stated: "In this connection, however, we think that it would be better for such an instruction to state only when the defendant's duty commenced, instead of prefacing such a statement with what the defendant 'had a right to assume.' While we do not consider this prejudicial per se, if the trial court had granted a new trial [83] on the ground that it was an overemphasis of the matter, we would be inclined (as in case of a new trial granted because of overemphasis of the burden of proof) to defer to its judgment."

■ The instruction is subject to the further vice that the use of the term "in the absence of notice to the contrary" denotes actual notice, which, even if the instruction were otherwise correct, would bring it under the ruling of Wilt v. Moody, Mo., 254 S.W. 2d 15, 21, wherein the court stated: "Instructions telling the jury a motorist has the right to *assume* another approaching motorist will obey the law and keep to his own side of the road, and that he owes *no* duty to the latter until the contrary becomes *apparent* to him, do not accord with the strict requirement of our motor vehicle law, Section 304.010 RSMo 1949, V.A.M.S., that 'Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the *highest* degree of care * * *.' [Italics ours.] The word assume or 'assumption' means the 'act of taking for granted, or supposing without proof that a thing is true.' Webster's New International Dictionary. That is precisely what our law forbids. He cannot assume away the duty of vigilance."

In defense of the instruction defendant cites several cases where these "entitled to assume" instructions were considered. Generally these cases deal with the acts of persons entering or leaving positions of peril, illustrated by what an engineer who observes a person approaching a railroad crossing or upon the railroad track may expect the person to do as it relates to the time when the duty arises to take action to avoid injuring the person. Among the cases cited are: See v. Wabash R. Co., 362 Mo. 489, 259 S.W.2d 828; Branson v. Aber-

nathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562; Stanton v. Jones, 332 Mo. 631, 59 S.W.2d 648; Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, 747; Poague v. Kurn, 346 Mo. 153, 140 S.W.2d 13, 18. The cases cited do not deal with the kind of lookout and degree of care required to discover a person in peril whose presence, however, is unknown to the operator of the instrumentality. None of the cited cases contain a positive misstatement of the law as we have found in this case.

The defendant further contends that the instruction "could not be construed by the jury as injecting into the case the contributory or primary negligence of plaintiff because plaintiff's instruction number 6 specifically excepts from their consideration as a defense, any acts or omissions, if any, of plaintiff directly contributing to his getting into or being in the aforesaid position of peril." We find no Instruction No. 6 in the transcript, but there is an Instruction No. 3 given at plaintiff's request which is probably the one intended. This contrary direction does not cure but tends to emphasize the conflict and confuse the jury as to which direction should be followed.

Since the case will have to be retried it should also be noted that defendant's Instruction No. 4 is also a converse humanitarian instruction with some cautionary directions and covers in many respects the same subject matter as Instruction No. 5. Ordinarily a party is not entitled to another instruction on a subject matter that has been once covered. Also it will be noted that the last sentence of Instruction No. 5 has the phrase "in time for defendant to avoid striking *defendant's* automobile." Obviously *plaintiff's* automobile was intended. This should be corrected to avoid possible confusion.

Defendant contends that the court should have sustained defendant's motion for a directed verdict and that any errors are therefore immaterial. He first specifies that "plaintiff's injuries could have been caused either by a collision with defendant's automobile, or by plaintiff's collision with steel guard rail and iron railing of bridge." Cited are the cases of Vietmeier v. Voss, Mo., 246 S.W.2d 785, 787, and Zimmerman v. Young, Mo.App., 280 S.W.2d 457, 461 in support of the general proposition that plaintiff's evidence must remove his case from the field of conjecture [84] and establish it by substantial evidence of probative value, and that where the question of liability or the cause of the injuries can be attributed with equal likelihood to two or more causes, a case for the jury has not been established. The facts of this case take it out of the purview of these rules.

The plaintiff positively testified that he was not injured in the collision with the guardrail and bridge railing and was getting out of his car when the Buick car hit him. Against this is the physical evidence of the terrific impact of the plaintiff's car with the guard and bridge railings and the extent and nature of the damage to plaintiff's automobile. Plaintiff's credibility was for the jury and the question

of whether the plaintiff's injuries were caused by a collision between the two automobiles was properly submitted to the jury under defendant's Instruction No. 6.

Defendant also contends that according to plaintiff's own testimony he "was not in imminent peril because he knew of the danger and could have escaped by his own efforts as he had ample time to do so." Defendant cites the cases of Clark v. A.T. & S.F. Ry. Co., 319 Mo. 865, 6 S.W.2d 954; Melenson v. Howell, 344 Mo. 1137, 130 S.W.2d 555; and Stanton v. Jones, 332 Mo. 631, 59 S.W.2d 648 in support of the general rule that a person is not in imminent peril who is aware of his danger and has the means and ability to escape therefrom. We cannot say, as a matter of law, that the plaintiff had the time or ability to escape. He testified at the trial that he had come in collision with the bridge about 30 or 40 seconds before the Buick car hit him, and that he had the left front door of his car open and was just getting out when he heard the screech of the brakes of defendant's car. On the other hand, the defendant undertook to prove by plaintiff's admissions that he had been in his car three or four minutes before the defendant's car came along. There was conflicting evidence about plaintiff's condition after the first accident. Defendant contended the plaintiff had been drinking more than he admitted and was intoxicated. The humanitarian rule is designed to take care of the oblivious, however caused. Under all the evidence, this question was likewise for the jury.

The plaintiff on his appeal makes three other allegations of error. Since the case is to be remanded for a new trial it will not be necessary to consider the plaintiff's contention that defendant's closing argument was highly inflammatory and commented upon plaintiff's conduct and contributory negligence in an improper and prejudicial fashion. The same argument is not likely to be made again. Counsel should be further guided in the next trial by the criticisms made.

Nor do we need to consider plaintiff's objections to permitting the defendant to testify that there was no collision between his car and that of the plaintiff when his answer contained an admission of the collision. This, likewise, is not likely to be a question in the next trial.

The appellant also alleges reversible error in the use on cross-examination of the "Missouri Drivers Guide" which contains a chart showing distances within which automobiles may be stopped traveling at various speeds. The record shows that Roy Willey, plaintiff's expert witness on stopping distances, was cross-examined by defendant's counsel with respect to his knowledge of the tables shown in the "Missouri Drivers Guide" and its general content.

Generally a wide latitude is allowed in the cross-examination of expert witnesses in order to test their qualifications, and for this purpose the contents of suitable publications properly identified may be used to test the witness's familiarity with the subject matter, although the

publication would not be admissible as independent evidence. Wiener v. Mutual Life Ins. Co., 352 Mo. 673, 179 S.W.2d 39, 44. The trial court did not abuse its discretion in permitting this cross-examination.

 Defendant's witness, Robert Herschell, an expert on stopping distances, stated during cross-examination by plaintiff's counsel that his answers were based [85] upon statistics taken from the National Safety Council. The court overruled the plaintiff's motion to strike the witness's testimony on the ground that it was based on hearsay. Other evidence of the witness's qualifications is in evidence. The matter was within the court's discretion and there was no error in the court's ruling. The weight of the witness's testimony was for the jury. For the error in giving Instruction No. 5, the judgment should be reversed and the cause remanded. It is so ordered. All concur.