John L. JOFFE, by Audrey J. Joffe, his Natural Guardian, Melvin J. Joffe and Audrey J. Joffe, Appellants,

v.

BEATRICE FOODS COMPANY, a Corporation, Respondent.

No. 23258.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1960.

Henry G. Eager, Franklin H. Mize, Kansas City (Blackmar, Swanson, Midgley, Jones & Eager), Kansas City, for appellants.

James W. Benjamin, Kansas City (Rogers, Field, Gentry & Jackson), Kansas City, for respondent.

HUNTER, Presiding Judge.

Four automobiles were involved in a highway collision. Plaintiff, John Joffe, a passenger, through his father brought action in count one for $25,000 for his personal injuries, and his father and mother in count two sued for $5,000 for loss of services. The defendants were plaintiff's driver, Willis Frazee; Mrs. Virginia Wilson and Noble Crisp, drivers of two of the other vehicles; and Beatrice Foods Company, the owner of the fourth vehicle.

At the close of plaintiff's evidence the trial court sustained separate motions for directed verdict for all defendants except plaintiff's driver. Thereafter, defendant Frazee rested without offering any evidence, and the contested issues were submitted only as to him. The jury returned its verdict of $7,000 on the personal injury count and $2,500 on the parents' claim, along with the directed verdicts. A judgment for $9,500 was entered against defendant Frazee who did not appeal and who paid plaintiffs $5,025 on the judgment.

An appeal to the Supreme Court followed the overruling of plaintiffs' joint motion for a new trial against defendants Beatrice and Wilson. A dismissal of Wilson was made at appellants' request. The Supreme Court ruled the amount in dispute on the appeal was $4,750 and transferred the appeal to this court. See, Joffe v. Beatrice Foods Company, Mo., 335 S.W.2d 34. The sole contention before us is that the trial court erred in directing a verdict for Beatrice Foods Company because plaintiffs made a submissible case of primary negligence against Beatrice.

In considering this contention our duty on appeal is to review the pertinent evidence in the light most favorable to plaintiffs and to give them the benefit of every inference reasonably deducible therefrom.

The accident occurred around 2:00 p. m. on June 6, 1957, on Highway 40 about 18 miles west of Boonville in Cooper County, Missouri. At this point the concrete two lane highway extended generally east and west, was 24 feet wide and had 12-foot wide level dirt shoulders on both the north and south. A private driveway extends south toward the Wilson farm house. The two collisions involved occurred just east of the driveway. There were no traffic signs in the vicinity.

The road surface was dry and the day was bright and clear. Visibility on the highway, if not obstructed by traffic, was unimpaired for 1,800 feet west of the scene and for about 900 feet to the east around a gradual curve to the south. This curve began about 600 feet east of the driveway.

Plaintiff, a 19 year old student at the University of Missouri, was returning to Kansas City from Columbia with his eighteen year old classmate and fraternity brother, Willis Frazee, in the latter's father's 1954 Ford. They had previously stopped at Boonville for lunch, and plaintiff recalls nothing that occurred after leaving Boonville.

Mrs. Virginia Wilson testified by deposition that she was in her Mercury automobile proceeding west on Highway 40 to the vicinity of the driveway to her house. At that time there were no cars in sight. While still some 300 to 500 feet away from her drive she commenced to signal for a left turn by putting on her left turn signal light and by putting her arm out to indicate the left turn. She gradually reduced

her speed. Then the Crisp Buick followed by the Beatrice truck appeared going about 45 miles per hour east on Highway 40. Mrs. Wilson decided to wait for these two vehicles to proceed on east past her private drive so as to permit her to make a left turn onto it. She had noticed a Ford car behind her when she was about 600 feet from the drive. When she was 200 feet from the drive with her left turn lights on and her arm out the window signaling a left turn the Ford was 600 to 700 feet behind her. She stated there was nothing then to apprise her of danger. She was waiting for the Buick and the truck to proceed past her driveway so she could make her left turn. She next noticed the Ford just before its brakes were put on. At that point she was just a few feet from the driveway and was going five miles per hour. It was coming up on her very fast and was only two or three car lengths behind her as its brakes were applied. Its front end went down and it skidded out of control to the south directly into the path of the oncoming Buick. She was still on the road at the time of the impact between the Ford and Buick. She travelled 20 feet forward to the point where she pulled off the north side of the highway. She stated she had first sensed danger just prior to the Ford's brakes being applied, and she endeavored to speed up but before she could do so the Ford skidded into the oncoming Buick.

Crisp testified he was proceeding in his Buick east from Kansas City to Columbia to take his daughter to school. As he approached the scene of the accident he observed the Wilson Mercury stopped on its side of the highway with its driver giving the left turn arm signal. Mrs. Wilson wasn't turning but he began to slow down so he could stop in the event she decided to turn in front of him. He was going slowly enough to avoid an accident if she did turn. He also saw the Ford in the distance coming around the curve about 50 to 55 miles per hour. It was away some "400 feet, maybe more, I don't know." He

continued to watch it. The driver of the Ford could plainly see her car and see her giving the left turn signals with her arm and turn lights as there was nothing to interfere with his vision. Crisp acknowledges there was a moment before the driver of the Ford put on its brakes when he realized that unless the Ford changed its speed or did something it would hit the Wilson Mercury, but the Ford's turning out and hitting him happened so fast he could do nothing more than he did without throwing his Buick car out of control. "I didn't have any idea the accident was going to occur until it (the Ford) came into my (the south) lane." "Q. This Ford actually darted out in front of you almost directly and immediately in your path, didn't it? A. It did, sir." It was about 15 to 20 feet in front of him when it darted out without warning in front of him, "it could have been less". The impact knocked his Buick back about 25 feet and to the south into the path of the Beatrice truck that had swerved onto the south shoulder. While his Buick was at an angle in the ditch and on the shoulder the truck came into contact with the left side of the Buick car. "I remember the impact and then moments later, or seconds later, I remember the other (impact). Q. After the first impact, when you say 'moments' or 'seconds' you don't know whether it was a split second? A. It was a bang, just like that."

Max Brown, driver of the Beatrice Foods Company truck, testified he was going east between 40 and 45 miles an hour. His truck seat is about 2 to 4 feet higher than that of an ordinary car. He could stop his truck in about 140 or 150 feet. He first saw the Ford when it was in its own lane and just coming out of the curve east, a block and three quarters or two blocks away. The Wilson Mercury was then going west at a slow rate about a block from the driveway. He then watched the car in front of him and the one on his left hand side. He was driving at what he thought was a safe distance behind the

truck. He saw Mrs. Wilson slowing and signaling a left turn. He knew she was waiting for the Buick and for him to go on by the drive so she could turn onto it. His earlier view of the Ford coming around the curve indicated nothing unusual. "Q. And when you saw the Frazee boy come around the curve some three, of four, or five hundred feet away and you saw Mrs. Wilson's arm out the window with her flashing lights on did you have any reason to suspect that the Frazee boy would never slow down until he was within 55 feet of ramming her rear end? A. No, sir." The first thing he knew about anything unusual that was going to happen was when the Ford darted out from behind Mrs. Wilson's Mercury sliding sideways onto the wrong side of the road into the path of Mr. Crisp's Buick. Brown was then within a car length or two of the Mercury that was waiting to turn and around 110 to 125 feet from the Ford. He was "about 4 or 5 car lengths back" from the Buick automobile— "probably about 70 or 80 feet" at the time of the first impact. "I imagine a car length is around maybe 16 or 18 feet". Brown stated that when he was about 110 feet from the Ford which was one or two car lengths behind the Mercury and the Ford unexpectedly darted out onto the wrong side of the road he took his foot off from the foot pedal, made an emergency application of his brakes and headed off the shoulder on his right (south) side. The Ford turned into the eastbound (south) lane, sliding sideways and hit the Buick in front of him. Brown had started steering to the right (south) just prior to the Buick and the Ford impacting. "Q. About what speed was your truck going when it hit the Buick, Mr. Brown? A. Between 40 and 45." He later explained he was going this 40 to 45 miles per hour when the Ford darted out into the Buick's path, and had slowed somewhat before the impact, and did not know his reduced speed at the time of the second impact. He stated the crash occurred right in his path, as near as he could estimate it some 4 or 5 car lengths in front of him. It drove the Buick back in his general direction, and the Ford was swinging around in the roadway. People and baggage were coming out of it. In the emergency he did the only available thing, braked and turned to his right. He didn't have time to come to a full emergency stop. His braked wheels slid some on the gravel-dirt shoulder. When he started for the shoulder none of the vehicles had come over there yet.

According to Brown, at the time of the impact of the Ford and the Crisp Buick, the Ford was across the road in a southwest angle. The Buick was going mostly straight. After the impact the Ford went counterclockwise ending partly across the road to the north. Its driver, Frazee, had been thrown out on the roadway on the south side in the lane for east going traffic and was in Brown's path if Brown had not turned onto the south shoulder. The Buick was knocked back and south into the path of his truck on the south shoulder. He, Brown, had nothing to do with the Buick and the Ford coming into collision. That had happened and he was just trying to get out of the way.

Defendant Willis Frazee, driver of the Ford, testified he was going approximately 55 miles an hour as he rounded the mentioned curve. He saw the Mercury and if there was then a signal for a turn he didn't see it. He didn't have any idea she was turning until he saw the signal. "Then I applied the brakes and skidded into the left lane * * * and collided head on with the Buick headed eastward." After he put on his brakes his car went out of control. He was about 200 feet behind the Mercury "when I put my foot on the brakes." He did this as soon as he saw her signaling for a turn. She was in her half of the highway. He doesn't know if she was moving or not. "Q. You didn't know she was going to turn and didn't see her signal until you got within 24 feet of her and put on your brakes? A. Yes." His car immediately went out of control skidding diagonally southwest across the

south highway, the right front of the Ford hitting the left front of the oncoming Buick. He did not see the Buick until 10 feet from it and was "just ready to collide" with it. He was going about 30 miles per hour when he hit the Buick. He did not at any time prior to the collision see the Beatrice truck. After the collision with the Ford he saw John Joffe on the right shoulder lying underneath the Beatrice truck.

Highway Patrolman Phillips testified that upon investigation he found fresh skid marks, apparently from the Ford, which were 55 feet in length, crossed over the center line and ended on the west in the middle of the eastbound lane at a point 80 feet east of the Wilson driveway. Farther to the west Trooper Phillips saw other new skid marks which were 67 feet long and extended continuously from the south lane onto the shoulder up to the wheels of the Beatrice truck. These latter marks commenced on the west near the east edge of the private driveway and that portion which was on the south shoulder measured 31 feet. The officer also observed one debris spot in the eastbound lane near the west terminus of the Ford's skid marks and another one located on the south shoulder 14 feet from the Buick and 6 or 7 feet off of the pavement. Apparently these two debris spots were 25 feet apart.

As mentioned, plaintiff did not testify as to how the accident occurred, stating he had no memory of what happened after he left Boonville.

■ It is only where the evidence of negligence is conflicting or such that reasonable men can draw different conclusions therefrom without resort to mere speculation and surmise that the question is one for the jury.

It is plaintiff's contention that the evidence viewed in the light most favorable to plaintiff is sufficient to make a submissible jury issue and would support a finding that defendant Beatrice Foods Company, through its driver Brown, violated its duty to exercise the highest degree of care in the operation of its truck by failing to apprehend the perilous situation building up as the Ford approached the Mercury as it was waiting to turn into the Wilson drive, by following too close and too fast behind the Mercury and by striking the Buick and ending up with plaintiff under the truck under circumstances which plaintiffs say indicate the truck had run over plaintiff's leg.

■ Generally, the driver of a motor vehicle has the right to follow a vehicle in front of him at a reasonably safe distance taking into consideration the surrounding circumstances, and the mere fact that one vehicle is moving in close proximity to, and keeping up with another, does not of itself constitute negligence.

■ The driver of the following vehicle is charged with driving so as to have his car under control to avoid foreseeable dangers and emergencies but he is not to be charged with anticipating an emergency created by the negligence of another under circumstances that could not have been reasonably anticipated by him as a driver exercising the highest degree of care. Pitts v. Garner, Mo.Sup., 321 S.W.2d 509; Nydegger v. Mason, Mo.Sup., 315 S.W.2d 816.

It was the duty of the operator of the Beatrice truck to exercise the highest degree of care in the operation of the motor vehicle and to keep a lookout ahead and laterally ahead in the direction in which the truck was moving in order to avoid injury and damage to others. To fulfill this duty he was required to look in such an observant manner as to enable him to see what a person in the exercise of the highest degree of care for the safety of himself and others would be expected to see under similar circumstances. See, Thaller v. Skinner & Kennedy Company, Mo.Sup., 315 S.W.2d 124(4); Section 304.010 RSMo 1949, V.A.M.S.; Wilt v. Moody, Mo.Sup., 254 S.W.2d 15(7); Faught v. Washam, 365 Mo. 1021, 291 S.W.2d 78(5).

It is helpful to consider several questions before determining the question of submissibility.

First, did Beatrice in any way cause or contribute to cause the collision between the Frazee Ford and the Crisp Buick? Or as suggested by respondent did Beatrice have nothing to do with the Buick and Ford coming into collision, and act only to avoid the consequences of that collision? As we view the record there is no evidence from which a jury as reasonable men could find that Beatrice caused or contributed to cause the collision between the Ford and the Buick. The driver of the Ford never saw the Beatrice truck until he was out of control and about to collide with the Buick. Nothing that the Beatrice truck or its driver Brown did affected the movements or action of the Ford or its driver and the Beatrice truck did not collide with the Ford.

Did Beatrice cause or contribute to cause the Buick to collide with the Ford? The record does not contain evidence necessary to support an affirmative answer. The Buick's driver Crisp noticed the Beatrice truck an unstated distance behind him when both were about a mile from where the accident occurred. There is no evidence to indicate that as Crisp approached the private driveway and gradually slowed down so he could make an emergency stop if the Wilson Mercury left-turned in front of him, he was in any way influenced by the position of the Beatrice truck which was behind him at an unnamed distance. When the Ford darted out into the path of the slowed Buick the only evidence as to the position of the Beatrice truck was its driver Brown's statement to the effect that he was following at a safe distance, four or five car lengths back. Nor is there any evidence to support a finding or inference that Crisp withheld full use of his brakes because of the position of the Beatrice truck. Crisp did state he didn't put his brakes on full because he might swerve and hit the *Wilson* car if he applied them too hard too sudden. He also indicated he

didn't have time to apply them any harder. At no place did he say or suggest the position of the Beatrice truck influenced his braking action. The truck's contact on the shoulder with the Buick neither caused nor contributed to cause the earlier collision between the Ford and the Buick.

With the question of Beatrice's responsibility for the collision between the Ford and the Buick out of the way we come to the decisive question; namely, did Beatrice, through its employee Brown, breach its duty to plaintiff of exercising the highest degree of care in operating its motor vehicle so as to avoid injury to plaintiff. We must determine whether or not there is evidence from which a jury without resort to mere speculation and surmise could find that the operator of the Beatrice truck in the exercise of the highest degree of care either did or should have apprehended the danger of the Ford colliding with another car, causing plaintiff to be thrown out where the truck might injure him, early enough for Brown to have stopped, slowed, or swerved the Beatrice truck so as to avoid contact with plaintiff. For although it ordinarily may be assumed where a motor vehicle meets another vehicle approaching from the opposite direction that due care will be exercised to avoid an accident and that the rules of the road will be obeyed, such right to so assume is a qualified right and exists only until an involved driver knows or, in the exercise of the highest degree of care, should know otherwise. See, 60 C.J.S. Motor Vehicles § 317, pp. 733, 735, Faught v. Washam, supra; Pitt v. Garner, supra.

Both Brown and Crisp testified they did not apprehend danger until the approximate moment the Ford skidded into the south lane. The evidence concerning the speed of the Ford after it rounded the mentioned curve is vague and does not indicate any basis absent speculation and surmise for finding that the Ford was approaching the Mercury at so great a speed that at any place or time prior to the approximate place it skidded out to the south

side of the highway it couldn't or wouldn't slow so as to stay behind the Wilson Mercury until after both Crisp and Brown had proceeded past it. As the Ford came across the center line, it was only 10 to 15 feet away from the Crisp Buick and about 110 feet from the Beatrice truck. The truck was braking and slowing from a speed of 40–45 miles per hour with a stopping distance of 140 to 150 feet. The oncoming Ford was converging at a speed of 55 miles per hour and was traveling at a speed of 30 miles per hour at the time of its impact with the Crisp Buick. Under such circumstances it would require rank speculation to say Brown, in sufficient time to have avoided injury to plaintiff, in the exercise of the highest degree of care could and should have anticipated that Frazee would not keep his Ford car under control and remain on his side of the road but would dart out of control into the path of the Crisp Buick and involve the Beatrice truck in injury to plaintiff.

Nor is there evidence which would reasonably support an inference that Brown failed in his duty to plaintiff to exercise the highest degree of care to avoid injuring plaintiff in his application of his brakes and turning onto his right (south) shoulder. At these speeds and distances Brown did the only thing he could reasonably do in the approximately 1 to 2 seconds theoretically available to him by braking and pulling off as far as possible to the right. With the driver of the Ford and at least a portion of the Ford in the north lane, and with the Buick having been hit in the south lane, the emergency selection of the right shoulder to turn on would be reasonable. Certainly such action would not support a reasonable inference of or basis for a finding of negligence. See, Annotation, 47 A.L.R. 2d 6, 11; Koob v. Schmolt, 241 Iowa 1294, 45 N.W.2d 216, 218.

■ We hold as a matter of law as the trial court did, that there is no evidence from which a jury composed of reasonable men, without resort to mere speculation and surmise, could find that defendant Beatrice was negligent in its conduct toward plaintiff. Cf. Soudelier v. Johnson, La.App., 95 So.2d 39; 104 A.L.R. 500.

Having determined that the evidence was not sufficient to permit the case to go to the jury on the question of Beatrice's negligence toward plaintiff, it is unnecessary to examine the evidence which appellants contend indicates the Beatrice truck ran over plaintiff's leg during the gyrations of the three vehicles that were involved in the two impacts.

The judgment is affirmed.

All concur.