Emma KUEHN, Respondent,

v.

Bryce D. HAHN, Appellant.

No. 50331.

Supreme Court of Missouri,

Division No. 2.

July 13, 1964.

446

Albert E. Schoenbeck, St. Louis, Paul E. Corning, Jr., St. Louis, for respondent.

Carter, Fitzsimmons & Brinker, Paul E. Fitzsimmons, Clayton, for appellant.

PRITCHARD, Commissioner.

This is a personal injury action of plaintiff pedestrian against defendant who was operating a motor vehicle which struck plaintiff when she was walking southwardly in a crosswalk and when she reached a traffic curb lane on the south side of Southwest Avenue in St. Louis, Missouri. Plaintiff's case was submitted to the jury upon her theory of defendant's humanitarian negligence in failing sufficiently to slacken speed, or swerve his automobile, or to give a warning to plaintiff. Judgment upon verdict, from which defendant appeals, was in the amount of $22,500.00.

Defendant contends that plaintiff did not make a submissible case of his humanitarian negligence. In ruling upon this issue we disregard defendant's evidence except insofar as it may aid plaintiff, and we consider plaintiff's evidence as true and give to her the benefit of all favorable inferences which may be drawn from the evidence. Terminal Warehouses of St. Joseph, Inc. v. Reiners, Mo., 371 S.W.2d 311, 312[1].

The occurrence was on Thursday, December 10, 1959, between the hours of 5:00 and 6:00 p. m. Plaintiff had been traveling west in a bus from a shopping trip in downtown St. Louis. At the northeast corner and somewhat east of the intersection of Hampton Avenue and Southwest Avenue, plaintiff alighted from the bus intending to transfer to a southbound Hampton Avenue bus to her home on Itaska Street. The bus stop for the Hampton Avenue bus was on the southwest corner of the intersection necessitating plaintiff to walk across Southwest to the south and then to Hampton to the west where she would have been required to wait about twenty minutes for the bus to arrive.

The intersection in question was not square, but was more in the shape of a parallelogram, slanted to the west as one looks toward the north. Thus, the angle by which Southwest intersected Hampton at the southeast corner was 53 degrees, and at the northeast corner 127 degrees. Although Southwest was only 36 feet 6 inches wide, measured curb to curb, the crosswalk upon which plaintiff was walking was 87 feet long. Southwest had two lanes each for east and westbound vehicular traffic; Hampton, being 56 feet wide, curb to curb, had three lanes each for north and southbound traffic.

When plaintiff reached the northern end of the marked crosswalk and started walking across Southwest the electric signal on the southeast corner of the intersection was green and a white arrow indicated "left turn." When she reached the middle of the intersection the "left turn" signal went off but the green "go" signal remained on. She continued walking fast to the south in the crosswalk and when she was in the most southern or curb lane for eastbound traffic on Southwest she first saw

defendant's automobile when it was right at her—a distance equal to the length of her cane from her. Her position was then about three feet from the sidewalk and she was in the east part of the crosswalk, which at that place was 9 feet 8 inches wide. She then took about two steps in an attempt to avoid being struck.

At the time of the impact of defendant's automobile against plaintiff it was dark; the area was well lighted by all the lights, automobiles (defendant had the lights of his vehicle on), a filling station on the northeast corner and a doughnut shop on the southeast corner; and the weather was dry. The intersection within its confines was practically level as shown by the photographs in evidence.

Defendant just prior to the accident, in driving to his home from his work, was headed south on Hampton. When he approached Southwest he stopped behind another automobile for a red light for about three seconds in the lane next to the center lane of Hampton. He could see the traffic signal on the southeast corner of the intersection, and when he received the signal therefrom he proceeded to make a left turn onto Southwest. He at no time observed any pedestrians walking in the crosswalk from north to south. When defendant first saw plaintiff she was five feet directly in front of his steering wheel and she was facing his right as he sat in his automobile. He did not know whether he swerved his automobile from the time he brought it to a stop, but he did apply his brakes and brought the vehicle to a stop on Southwest 25 feet east of the east curb line on Hampton. He did not sound his horn at any time. Before anything transpired defendant's maximum speed was 10 to 15 miles per hour. His 1953 Pontiac two-door sedan was in good mechanical condition, and the brakes thereon were working satisfactorily.

█ Under his first point challenging the submissibility of the plaintiff's case defendant seems only to maintain that her testimony is so contradictory that as a matter of law it should be disregarded. At no place does defendant point out where there is a deficiency of evidence upon any element of plaintiff's humanitarian submission of negligence. We have reviewed the record carefully and as hereinafter discussed we deem it clear that plaintiff made a submissible case. If her testimony were contradictory or inconsistent in any *material* respect (and it was not), the matter of resolving the same as between prior deposition statements and her testimony at the trial was for the jury. Johnson v. St. Louis Public Service Co., 363 Mo. 380, 251 S.W.2d 70, 73 [2]; Roberts v. Emerson Elec. Mfg. Co., Mo., 338 S.W.2d 62, 69 [7].

█ The jury could reasonably have found that after plaintiff reached the center line of Southwest, the left turn signal having gone off and the green "go" signal remaining on, she continued to walk southwardly with her back to southbound and east turning traffic on Hampton. She was therefore oblivious to defendant's approaching automobile. That obliviousness could have, in the jury's determination of the facts of this case, increased her apparent zone of imminent peril. Teague v. Plaza Express Co., 354 Mo. 582, 190 S.W.2d 254, 256 [1–3]; Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 976 [5–8]. The exact point of plaintiff's position of imminent peril is ordinarily for the jury to determine under the evidence. Perkins v. Terminal R. Ass'n of St. Louis, 340 Mo. 868, 102 S.W.2d 915, 921 [11]; Daniels v. Smith, Mo., 323 S.W.2d 705, 711 [6]; Sperry v. Tracy Dodge-Plymouth Co., Mo., 344 S.W.2d 108, 111. Under the facts of this case defendant's duty was to keep a vigilant lookout for pedestrians such as plaintiff in this intersection. That duty extended to discoverable peril. Faught v. Washam, 365 Mo. 1021, 291 S.W.2d 78, 81 [2, 3]. Plaintiff being in a zone of imminent peril and defendant having had a duty to discover her therein, both of which elements the jury

might reasonably have found, what could the jury have further found concerning defendant's ability thereafter to avert the injury?

There was no direct testimony of defendant's ability to slacken the speed of his automobile and thus avoid plaintiff. There was, however, testimony from defendant himself as to the place where he actually stopped after having applied his brakes upon seeing plaintiff 5 feet in front of him. That was 25 feet east of the east curb line (as extended northward) of Hampton. By simple computation the distance within which defendant did stop his automobile could have been computed by the jury. The west line of the southern portion of the crosswalk was 9 feet 2 inches from the east curb line of Hampton (as extended). The crosswalk itself was 9 feet 8 inches wide at that point. Defendant saw plaintiff when she was 5 feet in front of him and he then applied his brakes. Plaintiff testified she was in the eastern part of the crosswalk, so defendant would have been about at the west line thereof. Subtracting 9 feet 2 inches from the 25 feet would leave approximately 16 feet as defendant's stopping distance at his speed of 10–15 miles per hour at a time when he could have seen plaintiff in a position of peril on the crosswalk. If he could have stopped within 16 feet he could have sufficiently slackened the speed of his automobile so as to have permitted plaintiff to continue on her way in this "almost escaping" case. See Steger v. Meehan, Mo., 63 S.W.2d 109, 110 [2, 3], where it was said, "The greatly increased speed and use of automobiles and their improved brakes and other appliances has greatly speeded up traffic on our streets and highways. These things and the greater duty resting upon their drivers have also speeded up the humanitarian doctrine as applied to them. If an automobile can be driven (at 25 miles per hour) 75 feet in two seconds, surely it can be swerved 3 or 4 feet to one side in that time to avoid

striking a pedestrian 2 feet from the curb. If it can be brought to a complete stop in 20 feet, surely it can be slowed enough in much less than that distance to allow a pedestrian, in such a position, to escape it."

Concerning defendant's ability to swerve his automobile and avoid plaintiff who was three feet from safety (by her testimony considered as being true), in addition to the Steger case, supra, see Perry v. Dever, Mo., 303 S.W.2d 1, 7 [13], where it was said, quoting Brown v. Callicotte, Mo., 73 S.W.2d 190, 193, and Shaw v. Griffith, Mo.App., 291 S.W.2d 230, 235, "It is too generally and well known to require formal proof that present day automobiles respond quickly and accurately to the touch of the driver's hand on the steering wheel. The necessary impulse may be applied in an instant."

The jury could have further found that a warning by defendant to the oblivious plaintiff would have prevented her from pursuing her course into defendant's path. As a reasonably prudent person defendant should have realized that plaintiff was in or was going into danger (Allen v. Kessler, Mo., 64 S.W.2d 630, 632 [1–4]; McCarthy v. Sheridan, 336 Mo. 1201, 83 S.W.2d 907, 909) and that the obliviousness of plaintiff pedestrian to defendant's approaching automobile could extend her imminent peril zone beyond her ability to stop short of the path of such automobile. McFarland v. Wildhaber, Mo., 334 S.W.2d 1, 3 [2–7]. Defendant's first point is ruled against him.

■ Defendant's second point is that the court erred in giving the humanitarian Instruction No. 1 because it was not supported by the evidence and because it failed to hypothesize essential facts (place of imminent peril) which the jury must have found in order to return a verdict for the plaintiff. Under this point defendant contends that there was no evidence as to where plaintiff came into a position of imminent peril. The instruction requires

the finding that while crossing the street plaintiff came into and was in a position of imminent peril of being struck and injured. We have discussed above the fact that the jury could reasonably have determined that plaintiff was in a position of imminent peril and we have held and cited the cases which hold that the determination of the place of such peril is for the jury. Nothing more is required. It would have been error to have instructed the jury as to *when* (i. e., time and place) the plaintiff came into peril. Wofford v. St. Louis Public Service Co., Mo., 252 S.W.2d 529, 533; Harrington v. Thompson, Mo., 243 S.W.2d 519, 525. Point 2 is overruled.

■ The third point of defendant is directed toward the propriety of the giving of the damage Instruction No. 9. Defendant says that instruction permitted double damages. Instruction No. 9 reads, concerning the parts of which defendant complains:

"* * * In arriving at the amount of your verdict, you may take into consideration the following:

"First: The nature, character and extent of the injuries, if any, sustained by plaintiff.

"Second: The physical pain and mental anguish, if any, which plaintiff has suffered as a direct result of said injuries.

"Third: The physical pain and mental anguish, if any, which plaintiff is reasonably certain to suffer in the future as a direct result of such injuries."

It is apparent that the foregoing instruction would not allow the jury to assess double damages. It first requires a *consideration* of the nature and extent of plaintiff's injuries, then flowing from that only the *past* pain and mental anguish plaintiff had suffered and the *future* pain and men-

tal anguish plaintiff was reasonably certain to suffer. See Moss v. Mindlin's, Incorporated, Mo., 301 S.W.2d 761, 768; Kelly v. Kansas City Public Service Company, Mo., 335 S.W.2d 159, 165 [10]. There is no merit in defendant's Point 3, and it is overruled.

■■ For his fourth and last point defendant says the court erred in ruling on objections and in the final argument. Defendant first says that plaintiff started to cry during her direct examination which created prejudice against him. The record reveals that counsel for defendant called this incident to the attention of the court by stating that plaintiff *almost* started to cry and that he noted that the jurors paid particular attention to it. The court overruled the request for mistrial saying that he didn't notice any incident. That should dispose of the matter because the trial court was in a position to observe and to judge the prejudicial effect of any such emotional demonstration. Furthermore, the matter of declaring a requested mistrial by reason of such emotional outbursts rests in the sound discretion of the trial court. Golian v. Stanley, Mo., 334 S.W.2d 88, 91 [1–3]; Skadal v. Brown, Mo., 351 S.W.2d 684, 690 [16–18]; Walton v. United States Steel Corporation, Mo., 362 S.W.2d 617, 626.

■ Defendant next says the court erred in overruling his objection to the cross-examination of witness Fritz who was the driver of the bus from which plaintiff alighted on Southwest. Fritz was asked if he had not stated that when passengers got off of his bus he was glad to get rid of them, and a portion of his deposition was read in which he stated the same thing, and also that he didn't recall specifically about any passengers getting off his bus. Defendant claims that "The sole purpose of this question was to discredit this one disinterested eyewitness in the eyes of the jury, prejudice the defendant, and to attempt to persuade the jury as to the cre-

dence of the fanciful story of the plaintiff." We perceive no error in these respects. The cross-examination of witness Fritz was proper, and tended to test his opportunity and interest to observe plaintiff.

 Defendant was asked on cross-examination if he did not write out in his own handwriting a statement to the police that the right front headlight of his automobile struck plaintiff. Defendant answered that he did not recall, but stated that he did write a statement. Defendant says it is "error to receive evidence in the possession of an unidentified witness who is not in court and subject to cross-examination." We see no error. It was proper for plaintiff to cross-examine defendant as to any admissions made with respect to what part of his automobile struck plaintiff, and the statement was not offered or received in evidence.

The above are the only objections to which defendant directs our attention, and which were ruled against him. There were two objections by defendant in the final argument which were ruled properly by the court. Defendant otherwise elected to remain silent because, as he says, the trial court "consistently failed to sustain meritorious objections. This was particularly true in the final argument where it was deemed not to be prudent to interpose objections when defendant's counsel knew that the judge would not sustain the objection, * * *." A party may not sit silently by and expect the trial court to protect his record. The function and purpose of timely objections and requests during trial is not only to preserve error but is to call to the trial court's attention any such error in order that corrective measures may be taken, such as sustaining the objection, directing the jury to disregard improper matters, and even admonishing or reprimanding counsel whose conduct is improper. We discover no prejudice in any matter to defendant. Point 4 is overruled. The case was fairly tried and the verdict was for the right party under the evidence.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court,

All of the Judges concur.