William S. STRADFORD, Appellant,

v.

Yevonniessia BLUEFEATHER, Respondent.

No. 50427.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1964.

Orville C. Winchell, Lebanon, for appellant.

Paul E. Decker, Melvin E. Carnahan, Rolla, for respondent.

HIGGINS, Commissioner.

Plaintiff, William S. Stradford, brought an action against defendant, Yevonniessia Bluefeather, for $5,310 property damage and personal injuries, and defendant counterclaimed for $26,200 property damages and personal injuries, all said to arise from a collision between a 1953 Ford automobile driven by plaintiff and a 1962 Mercury automobile driven by defendant. Plaintiff's petition was dismissed pursuant to stipulation and trial proceeded on the counterclaim. The jury found against defendant on her counterclaim; the court awarded her a new trial, and it is from that order that plaintiff appeals. The amount involved in the counterclaim is in excess of $15,000 and we have jurisdiction. Article V, Section 3, Missouri Constitution, V.A.M.S.; Section 477.040, RSMo 1959, V.A.M.S.

Appellant's single point is that "The Trial Court erred in giving and reading to the jury defendant's Instruction D–A at the request of the defendant. There was not sufficient evidence for the Trial Court to have submitted humanitarian negligence to the jury, taking into consideration only the evidence most favorable to the defendant." This charge requires that we determine whether respondent made a submissible humanitarian case on failure to swerve. In making that determination we review the evidence from a standpoint favorable to respondent, give her the benefit of any part of appellant's evidence favorable to her, give her the benefit of all reasonable inferences from all the evidence, and disregard appellant's evidence unfavorable to her. Terminal Warehouses of St. Joseph, Inc. v. Reiners, Mo., 371 S.W. 2d 311, 312[1].

Viewing the evidence as indicated above, a jury reasonably could have found the facts to be as they appear in this statement. The casualty occurred about 7:30 p. m., February 24, 1962, on Nebraska Avenue near Theatre No. 4 on Fort Leonard Wood military reservation. It was dark and respondent had lights on her 1962 Mercury Monterey automobile as she drove south on Nebraska Avenue. "The post lights were on, on the movie; the ball game lights was on at the ball game. It was all lit up." The theater was located on the east side of Nebraska Avenue and the ball park was located across from it. Respondent intended to turn from the west half or southbound lane of Nebraska, cross the east half or northbound lane, and park her car in a recessed parking area in front of the theater. She drove to a point in her southbound lane which was immediately west of the theater and just to her right of the center of Nebraska Avenue. She had her turn signal on and crossed the center of the street. While at an angle of about 45 degrees in the course of her turn and with her car partially on either side of the center of the street, she stopped because a taxi "darted" into her intended parking place. She remained stopped with as much as 75 per cent of the length of her car in the northbound side of the street for five to ten seconds "when all of a sudden there come a car * * * going like this (indicating), wiggle, you know, across the road. * * * you know, all the way across (indicating). So I can't move. I just have to sit there. And all of a sudden this car, it hit me." Respondent's car was struck on its right front fender and near the door post by the right front corner of appellant's 1953 Ford Customline automobile. There was evidence to the effect that there was as much as 25 feet of space between the front of respondent's car and the taxi which had parked where respondent intended to park, and an equal amount of space behind her, and that, other than appellant, no cars were moving on the street. Nebraska Street was 69 or 70 feet in width, was generally straight, level, and with unobstructed view for 300 to 400 feet south of the collision. Weather conditions were good and the street was dry. Edward L. Smith, a cab driver, had his taxi parked in front of the theater but at the east edge of Nebraska and a little south of the recessed parking area. He saw respondent come southward on Nebraska Avenue, signal for a left turn, commence her turn, and stop with part of her car over the imaginary center line when a taxi pulled around him and into the parking place to which respondent was headed. He stated that she had to remain stopped because the taxi took her parking place. He heard appellant's car and turned to the south and observed it coming north on Nebraska. The witness first saw appellant when appellant was about 350 feet south of the point of collision and judged his speed at 35 miles per hour. He also judged that there was "more than a car width" between the parked cab and respondent's vehicle. He stated that appellant was never outside his own northbound lane; that he did not turn to the right or left, and struck respondent in the east half or northbound lane of the street. He also stated that there were no vehicles parked west of respondent's car,

and that there was nothing to obstruct a vehicle from driving through on the south-bound portion of the street or between respondent and the parked taxi on the north-bound side of the street. This witness also testified that one could see 350 feet south-ward from the impact; that there was no obstruction to prevent a driver going north, as appellant was driving, from seeing respondent and that he (appellant) could see this area and respondent. Appellant applied his brakes a little more than a car's length from respondent and caused his wheels to skid up to the impact which occurred with the front of appellant's car near the center of the street and the rear of the car well to the right of the center. Upon written interrogatory appellant testified:

"Q State whether or not the brakes, steering apparatus and lights of the automobile you were driving at the time of the accident * * * were in good mechanical condition. * * *

"A My car was in good operating condition as far as the brakes, steering and the lights were concerned.

"Q State whether or not there was any obstruction to your view of the defendant's automobile as you approached the same prior to the accident * * *.

"A There was traffic moving along the roadway but otherwise, no other obstructions."

It is our view that the foregoing evidence was sufficient for a jury reasonably to find each of the essential elements of a humanitarian case as set out in Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484 [2].

■ Under the humanitarian doctrine no duty to act was imposed upon appellant until a situation of peril arose. Vietmeier v. Voss, Mo., 246 S.W.2d 785, 788 [4]. In this case, respondent was stopped with her car at a 45-degree angle to the imaginary center line, partially on either side of the center of the road. In this situation she

was necessarily in the path of any north-bound traffic then on Nebraska Avenue. Respondent could reasonably be found in imminent peril when so stopped partly in appellant's lane of travel with appellant bearing down upon her at the place where it became apparent to appellant that unless some act or thing intervened to interrupt the collision course thus existing, collision was inevitable and injury was reasonably certain, Yarrington v. Lininger, Mo., 327 S.W.2d 104, 109 [8–10]; and the place or position of imminent peril was properly for the jury to determine in this case. Perkins v. Terminal R. Ass'n of St. Louis, 340 Mo. 868, 102 S.W.2d 915, 923 [13]; Kuehn v. Hahn, Mo., 380 S.W.2d 445, 450 [5].

■ We have said: "In the case of automobiles operating upon public streets and highways, the operator has imposed upon him the continuous statutory duty to exercise the highest degree of care at all times and all places thereon to keep a lookout for persons thereon and in every other respect." Mayfield v. Kansas City Southern Ry. Co., 337 Mo. 79, 85 S.W.2d 116, 123–124 [11–16]. That duty extended to discoverable peril, Faught v. Washam, 365 Mo. 1021, 291 S.W.2d 78, 81 [2,3]; and it applied to appellant here. The testimony of Edward L. Smith was that appellant could see respondent when appellant was 350 feet from respondent. Having the duty to have been on the lookout and with the opportunity to see respondent, appellant thus had notice of respondent's peril, Banks v. Morris, supra, and this issue was properly for the jury.

■ Having determined that a jury could reasonably have found respondent in a position of peril and that appellant had notice of that peril, what could the jury also find on the issue of appellant's present ability to avert the collision with safety to himself and others?

We have already seen from the evidence that when respondent's car was stopped

partially in appellant's lane of travel, appellant, in his car, could have seen respondent so stopped when he was still 350 feet away from collision with her. There was no direct evidence to show the distance in which appellant's car, traveling at 35 miles per hour, could have been stopped or what distance was required in which to swerve so as to avoid the collision. The evidence does show, however, that there were no obstructions to interfere with or prevent swerving of appellant's vehicle to either the left or right so as to avoid the collision; that the roadway was dry, and appellant's steering and braking equipment were in good condition. Under these circumstances, a jury reasonably could find that appellant's Ford automobile, within the distance of 350 feet, traveling at 35 miles per hour, could have been swerved sufficiently and in sufficient time to have avoided the collision. Danklef v. Armbruster, Mo.App., 91 S.W.2d 660, 663 [1, 2]; Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9, 13 [10]; Cross v. Wears, Mo. App., 67 S.W.2d 517, 519 [3]; Brown v. Callicotte, Mo., 73 S.W.2d 190, 193 [1, 2]; Perry v. Dever, Mo., 303 S.W.2d 1, 7 [13]; Daniels v. Smith, Mo., 323 S.W.2d 705, 709 [2, 3].

Wood v. Ezell, Mo.App., 342 S.W.2d 503, and Allen v. Hayen, Mo., 320 S.W.2d 441, cited by appellant, are not in point, and the issue of whether, in the exercise of the highest degree of care, appellant, by swerving within the distance available and with reasonable safety to himself and others, could have avoided the collision, was peculiarly a matter for the jury to determine. Terminal Warehouses of St. Joseph, Inc. v. Reiners, supra, 371 S.W.2d 1. c. 314 [3]. A jury reasonably could have found also that a failure to swerve was negligence and that such negligence caused the casualty.

There being evidence tending to prove all the elements of a humanitarian case, we hold that respondent made a submissible case on appellant's alleged failure to swerve.

The order and judgment of the trial court granting a new trial to respondent is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

HYDE, P. J., and HOLMAN and DALTON, JJ., concur.

HENLEY, J., concurs in result.