Tamra Jo MEIER, a minor, by and through her mother and next friend, Marie Meier, et al., Plaintiffs-Respondents,

v.

Jo Ann GEILE, Defendant-Appellant.

No. 34172.

Missouri Court of Appeals, St. Louis District.

March 28, 1972.

Gray, Friedman & Ritter, by C. Marshall Friedman, St. Louis, for plaintiffs-respondents.

Derrick & Holderle, St. Louis, for defendant-appellant.

CLEMENS, Judge (Commissioner when case was submitted).

Humanitarian case growing out of a collision between defendant's automobile and the nine-year-old plaintiff on a bicycle, with judgments of $15,000 for the girl and $6,000 for her parents.

Plaintiffs moved to dismiss defendant's appeal for failure to comply with

Civil Rule 83.05 (now Civil Rule 84.04), V.A.M.R. This criticism has merit but the defects are not so gross as to warrant dismissal.

Defendant challenges the sufficiency of evidence to show plaintiff was in a position of immediate danger and that defendant negligently failed to stop or swerve her car. Her arguments rely on her evidence that plaintiff (Tammy) turned sharply into the path of defendant's car. That conflicts starkly with plaintiffs' evidence that Tammy was stationary several seconds immediately before the collision. We measure the sufficiency of evidence by that favorable to plaintiffs.

West Florissant Boulevard is a north-south road, straight and level, sloping downhill to the south from Delwood Park. It is two lanes wide, flanked with numerous driveways and parking lots of business places. Between these the shoulders were soft dirt, then under construction.

*Position of Immediate Danger.* The collision occurred on a clear, dry Sunday afternoon. Tammy, her brother Ranny and sister Dannette were riding their bicycles north on West Florissant Boulevard on their way to the playground in Delwood Park. Defendant was driving south on Florissant. As defendant topped a slight ridge near Delwood Park, driving about 25 miles per hour, she saw the three bicycles approaching. Tammy was a block away, then in the northbound lane; Ranny was a block behind Tammy and Dannette a block behind him. Tammy was "easing over" toward defendant's southbound lane and defendant slowed to 15 miles an hour. Tammy stopped when she reached the center line, still astride her bicycle, "just holding her bike." It was straddling the center line, headed northwest, the front wheel a foot or foot and a half into the southbound lane. Tammy stood there a few seconds before the impact.

As said, defendant had reduced her speed to 15 miles an hour and had her foot on the brake. Except for a glance at her baby riding in a basket on the floor of her car, she had Tammy in her vision at all times and saw Tammy at the center line when 40 feet away. At no time did defendant change the direction of her car. She braked again and was going less than five miles an hour when the left front corner of her car struck the front wheel of the bicycle. Tammy was thrown into the air and against defendant's windshield.

■ Defendant contends the zone of immediate danger was the path of her car. We agree. She argues there was no danger until Tammy "swerved from her path on the center line into the path of the automobile five feet away." This ignores evidence that Tammy was standing astride her bicycle in the very path of defendant's car several seconds before the impact. Thus, Tammy was in a position of immediate danger unless defendant took evasive action. Compare Dressler v. Louvier, Mo., 408 S.W.2d 852 [2], and Stradford v. Bluefeather, Mo., 384 S.W.2d 541 [2], where the court said: "In this case, respondent was stopped with her car at a 45-degree angle to the imaginary center line, partially on either side of the center of the road. In this situation she was necessarily in the path of any northbound traffic then on Nebraska Avenue. Respondent could reasonably be found in imminent peril when so stopped partly in appellant's lane of travel with appellant bearing down upon her at the place where it became apparent to appellant that unless some act or thing intervened to interrupt the collision course thus existing, collision was inevitable and injury was reasonably certain, Yarrington v. Lininger, Mo., 327 S.W.2d 104, 109 [8–10]; and the place or position of imminent peril was properly for the jury to determine in this case. (Citing cases)."

The situation here is akin to that in Hawkins v. Allen Cab Co., Mo.App., 457 S.W.2d 940 [8], where plaintiff's standing automobile extended a few inches into the traffic lane of defendant's oncoming taxi, which failed to change its course or speed.

As there, we find here the evidence warranted the submission of plaintiff's immediate danger.

*Failure to Stop.* Defendant contends there was insufficient evidence to support plaintiffs' submission of negligent failure to stop. We judicially know an automobile traveling at 15 miles an hour can be stopped in less than 40 feet. See Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9; Losh v. Benton, Mo., 382 S.W.2d 617 [1, 2]. Here defendant testified she was going about 15 miles an hour and when Tammy was five to ten feet away she slammed on her brakes and was going less than five miles an hour at the moment of impact. If defendant could reduce her speed from 15 to less than five miles an hour in ten feet she could have *stopped* her car in the 40 feet of braking distance available to her. That would have prevented the collision. The humanitarian submission of negligent failure to stop was supported by the evidence.

*Failure to Swerve.* Defendant contends there was insufficient evidence to support plaintiffs' submission of negligent failure to swerve. By defendant's own testimony the southbound lane of West Florissant Boulevard was at least five feet wider than her car. Tammy's bicycle was at most a foot and a half into that lane, leaving defendant at least three and a half feet of clear road space to her right.[1] No direct evidence is needed to prove that in driving 15 miles an hour defendant could have swerved her car a foot and a half to her right within 40 feet of driving distance. Kuehn v. Hahn, Mo., 380 S.W.2d 445 [3, 4].

We have read the cases cited by defendant on the issue of liability. Each is factually dissimilar to our case and none is out of harmony with the principles we have followed here.

*Definition of Minor's Negligence.* Defendant's last point is aimed at plaintiffs' Instruction No. 6 defining negligence of a minor. The first paragraph of plaintiffs' Instructions No. 4 and No. 5, MAI 17.15 (Verdict Directing—Humanitarian Negligence, Disjunctive) read: "Your verdict must be for plaintiff[s] *whether or not plaintiff Tamra Jo Meier was negligent* if you believe:" (Our emphasis). The Notes on Use for MAI 17.15 authorize the emphasized words at plaintiff's option. The challenged instruction defined negligence of a minor in accordance with MAI 11.04: "The term 'negligence' as used in these instructions with respect to plaintiff Tamra Jo Meier means the failure to use that degree of care which an ordinary prudent girl of the same age, capacity and experience would use under the same or similar circumstances."

 Defendant says this erroneously injected Tamra Jo's antecedent negligence into a humanitarian case. The clause in the verdict directors "whether or not plaintiff Tamra Jo Meier was negligent" does in a sense "inject" a plaintiff's antecedent negligence into a humanitarian case—by excluding it. It is in effect a cautionary instruction telling the jury not to consider a plaintiff's antecedent negligence. That is the humanitarian doctrine and the Notes on Use of MAI 17.15 specifically authorize the cautionary words. Defendant's specific complaint is the giving of Instruction No. 6 defining negligence of a minor. The term "negligence" is a legal term; when used in a verdict director it should be defined. Brewer v. Swift & Co., Mo.Banc, 451 S.W.2d 131 [2]; Cunningham v. Hayes, Mo.App., 463 S.W.2d 555 [13–15]. Without a definition of negligence the verdict directors would give the jury a roving commission. Giving Instruction No. 6 was proper.

---

1. Defendant testified she was driving five feet *west* of the center line of Florissant. Accepting plaintiffs' testimony that Tammy was only a foot and a half from the center line when her bicycle was struck by defendant's car, the jury could have readily inferred defendant had three and a half feet of clear space to her *right* within which to swerve and avoid striking Tammy's bicycle.

Motion to dismiss the appeal is denied and the judgment is affirmed.

PER CURIAM.

The foregoing opinion by CLEMENS, J., a Commissioner when the case was submitted to the court, is adopted as the opinion of this court.

Accordingly, the motion to dismiss the appeal is denied and the judgment is affirmed.

BRADY, Chief Judge, and DOWD, SMITH, SIMEONE, and WEIER, JJ., concur.