Mildred SNIDER, Plaintiff-Respondent,

v.

Johnnie D. KING, Defendant-Appellant.

No. 7908.

Springfield Court of Appeals.

Missouri.

March 2, 1961.

Richert, Titus & Martin, Joplin, for appellant.

Herbert Douglas, Neosho, Karl W. Blanchard, Herbert Van Fleet, Seiler, Blanchard & Van Fleet, Joplin, for respondent.

McDOWELL, Judge.

This action is by the widow of deceased, Russell Wayne Snider, for the wrongful death of her husband resulting from injuries received in an automobile accident occurring at the intersection of State Highway 43 and Maple Road, a graveled highway, in Jasper County, Missouri, November 3, 1958. The jury-tried cause resulted in a verdict and judgment for plaintiff in the sum of $10,100. Defendant appealed.

Plaintiff's cause of action is based upon primary negligence in that defendant failed to yield the right of way to deceased, who was traveling on a through highway; failed to keep a proper lookout ahead and laterally for approaching traffic, and particularly for deceased when pulling from an intersecting country road onto a through highway.

The answer is a general denial of negligence.

Under defendant-appellant's assignments of error he raises three issues:

1. The sufficiency of the evidence to support the judgment.

2. The giving of Instruction No. 1.

3. The giving of Instruction No. 2.

The facts are: That Russell Wayne Snider, husband of plaintiff, was killed in an automobile accident at the intersection of State Highway No. 43 and Maple Road, about 10:00 o'clock, a. m., November 3, 1958. Highway No. 43 is a two lane blacktop road twenty feet wide, which runs generally north and south, but, in the area of the intersection in question, curves slightly to the northeast or to the right for north bound traffic and is moderately down grade at the intersection. Maple Road is a graveled public highway which runs east and west and intersects Highway 43 at right angles. 185 feet south of the center of Maple Road, at its junction with Highway 43, is a "Y" shaped junction where the north and south highway divides, the right fork being Highway 43 and the left fork known as the Galesburg Road, a graveled public highway. 63 feet west from the west edge of the intersection of Maple Road and Highway 43, Maple Road intersects the north-south Galesburg Road.

On the east shoulder of Highway 43 and 130 feet south of the center of Maple Road is a highway marker designating the blacktopped roadway as Highway 43. There is a stop sign on the north side of Maple Road 31 or 32 feet east of the intersection of that road with Highway 43, intended for observance of west bound traffic approaching the intersection from the east.

Property of the Countryside Bible Church is situated at the northeast corner of the intersection of Highway 43 and Maple Road, lying on the east of Highway 43 and extending north from Maple Road 318 feet; the church building, the residence of Reverend Parr, is 30 feet wide and located about 40 feet south of the north boundary line of the church property, making the south side of the building about 250 feet north of Maple Road. The west side of the building is 334.3 feet east of the edge of Highway 43. The church mailbox is located on the north side of Maple Road and east of the intersection of Highway 43, 425.8 feet and about 250 feet south of the church building near the east property line of the church.

Along the south side of Maple Road and the east side of Highway 43, south of the intersection, is an embankment and field, both of which are higher than the roadways involved. This condition, augmented by the curve and grade of Highway 43, limits the vision of west bound motorists on Maple Road in their view of approaching traffic from the south on Highway 43.

William Franklin Parr testified, by deposition, for plaintiff that on November 3, 1958, he was residing at the Countryside Bible Church property located at the northeast corner of the intersection of Highway 43 and Maple Road; that the church property extends north from Maple Road 318 feet and the church building is 30 feet wide and about 40 feet south of the north line so that the south side of the building is about 250 feet from Maple Road. He stated that the church mailbox was on the north side of Maple Road near the east line of the church property, about 400 feet east of Highway 43. Witness stated that he was familiar with the accident which took place November 3, 1958, about 10:00 o'clock a. m., at the intersection of Maple Road and Highway 43. He stated he went out the back door of the church building and walked towards the mailbox, which was roughly 250 feet from the church; that when he was about halfway to the mailbox he glanced up and saw a man going by in a red stock truck and waved to him; that the man was driving at a moderate rate of speed and he paid no more attention to him because he was looking at the mailbox, expecting an order of hymn books from Ohio; that when approximately half way through the rest of the distance to the mailbox he

glanced toward Highway 43 and noticed a dark colored pick-up truck coming around the curve and also noticed the red truck; at the time both trucks were in motion and in full view. He stated his view was more or less obstructed; that the black truck swerved slightly to the east; that he heard no sound of brakes being applied or no horns. There was no impact as though the trucks had struck each other and then the black truck swerved end for end and came to rest on the tip of the church ground. There was no sound of damage and witness stated that he just turned and walked on toward the mailbox; that the man in the red truck stopped on the other side of the intersection, came back and was looking around the truck; that he didn't know the man was there until he called. He stated he walked up to the truck which was on the edge of the church ground and found deceased lying under the back end, stretched out, his head near the housing of the back axle, lying face down. He stated he put his coat under his head so he would not smother and spoke to him but got no answer; that blood was running out of his mouth, nose and ears. Witness testified that defendant parked his truck on the west side of Highway 43 on Maple Road, which was well cleared of the highway. He did not know the exact distance from the highway. He testified there was a stop sign at the intersection of Maple Road and Highway 43 governing west bound traffic on Maple Road; that he did not know whether the red truck stopped before crossing Highway 43; that at the time he was walking toward the mailbox he heard the engine of the red truck accelerate as a car does in low gear. He testified:

"Q. Was that what attracted your attention? A. Well, I didn't look up even at that time. I glanced up a little bit later as I was walking to the mail box and I saw—when I glanced up I saw these two trucks.

"Q. Where was the red truck when you saw it? A. It was somewhere in the process of crossing the road.

"Q. When you say 'crossing the road', which road do you mean? A. Highway 43.

"Q. Was it on Highway 43 when you saw it? A. It was on the road. How far on or how far off, I wouldn't be able to say.

"Q. Did you see the blue or black coloured vehicle at the same time? A. As I glanced up they were both in my vision."

Witness testified from where he was standing at the time he saw the two vehicles, because of obstructions, that is, an embankment on the east side of the road, a curve on that section and shrubbery on the south edge of the church property, his visibility was cut to about 100 feet. He testified:

"Q. And the hundred feet that you have described is the distance that you could see south of this intersection— A. Yes, sir.

"Q. —on Highway 43? A. Yes, sir."

He testified he could not honestly tell the distance between the two trucks at the time he glanced up and both were in his view. He stated: "I wouldn't be able to say because it was a matter of split seconds."

Witness said that from the point where he was standing the contour of the land was uphill on Highway 43 as it comes from the south; that as it approaches the intersection of Maple Road it starts on a downgrade and, because of such obstructions to his vision on Highway 43, he could not see the running gear of the truck or the road and was unable to tell whether the wheels of deceased's truck were actually on the blacktop or not. He stated he did not remember whether the day was clear but it wasn't raining and his visibility was good. He gave this evidence:

"Q. Did you see the blue or black truck go off Highway 43 before it reached the Maple Road? A. It

swerved over to the east side of 43 just south of Maple Road and flipped across the road and ended on the church grounds headed back south."

On cross-examination witness testified:

"Q. And you saw the red truck continuing its journey in a westerly direction along Maple Road? A. Yes, sir.

"Q. And was it at that time, sir, that red stock truck was in the process or appeared to be in the process of crossing Highway 43? A. Yes, sir.

"Q. And was it at that same time, sir, that you saw the pick-up truck swerve to its right and go off the east edge of Highway 43? A. There was just a fraction of time before he swerved. He was coming around the curve and I saw both of them but there was just a little time elapsed between the time I saw them and the the time he swerved.

"Q. Let me ask you it again, sir: The red stock truck, sir, was in the process of crossing Highway No. 43 and had started across Highway 43 before the dark blue pick-up truck went into this swerve to the east? A. Yes, sir.

"Q. So that when the red stock truck was actually in the process of crossing Highway No. 43 the dark blue or black pick-up truck would be still south of the point where it eventually swerved off of Highway No. 43? A. Yes, sir."

Witness testified he observed gravel east of 43 and south of Maple Road had been disturbed and some dragged onto the road and grass and gravel were in the rim of one of the front wheels of deceased's car. He stated it was his impression that defendant had stopped at the stop sign. On reexamination, witness testified:

"Q. And how far south of the Maple Road did the disturbed gravel extend? A. Well, it was right in the corner of where the two roads intersect."

Trooper William D. East, testified he arrived at the scene of the accident in question about half an hour after it occurred. He identified defendant's exhibit (A) as a photograph taken at scene of accident. The camera was facing generally north showing defendant's truck on Maple Road, west of Highway 43, and a portion of the curve on Highway 43. He estimated the rear of defendant's truck was about 15 feet west of the west edge of the blacktop, Highway 43. He testified that he found marks caused by brake action of the tires on the pick-up truck starting about 110 feet south of the south edge of Maple Road or about 150 feet south of where deceased's pick-up came to rest. He gave this evidence:

"Q. Well, to start again, were there two marks, the marks of what appeared to be two wheels on the black top highway itself? A. Yes, sir.

"Q. Now, referring to the one of those two marks, which was the farthest to the east or to the right, as one proceeds north on Highway 43, do you have any judgment how far that mark was from the east edge of Highway 43? A. No, sir, I cannot recall. I will say this, to the best of my recollection, they were on the highway.

"Q. By 'on the highway', you mean on the black top itself? A. On the black top and not out in the ditch."

He said the shoulder on Highway 43 was not over two or three feet wide before you get down into the incline which is the drainage ditch; that the incline was a gradual one. He stated that Maple Road was a graveled road. He gave this evidence:

"Q. All right. Now, did you observe any marks on this graveled road? A. I'm sure that there was some

marks indicating that the truck had crossed this road."

He identified defendant's exhibit (B) as showing the correct position of deceased's pick-up at the time of the accident, which was headed in a southwest direction. He said the marks indicated that the pick-up truck had been traveling north on 43; that Highway 43 before, and as it reaches Maple Road, is slightly down hill and curves to the right. He estimated that defendant's truck was stopped on Maple Road west of the blacktop, 43, about 15 feet; that the position of the trucks had not been changed since the accident at the time of his arrival but the body of deceased had been removed.

Charles Snow, a photographer, testified he made the photographs marked defendant's exhibits (A), (B) and (C) and plaintiff's exhibits (1) and (2) on the day of accident. Defendant's exhibit (A) is a photograph of the accident scene from a point south of Maple Road, looking along Highway 43. The two (X) marks in red were made by Snow to designate the south end of two black rubber tire marks observed by witness on the pavement and being the marks that he saw Trooper East measuring. He testified that the south end of the east marks was about a foot west of the east edge of the blacktop. Plaintiff's exhibits (1) and (2) were "blowups" of defendant's exhibits (A) and the (X) marks appearing on these photographs are the same as the south end of the marks shown on defendant's exhibit (A). [We hereby attach defendant's exhibit (A) and plaintiff's exhibit (1), as identified above.]

Plaintiff's Exhibit (1)

Defendant's Exhibit (A)

Defendant's exhibit (B) is a photograph looking west down Maple Road from a point east of Highway 43. The red (X) marks on this exhibit were intended by Mr. Snow to show course of gravel and grass extending north and a little east across Maple Road.

The red (O) mark appearing on plaintiff's exhibit (1) was made to indicate where Snow observed a gouge along the south side of Maple Road. He testified the marks he observed on the south side of Maple Road were gouge marks where something had hit into the side of the embankment. He stated he found marks and grass across the gravel road leading up to the truck; that the embankment along the south side of Maple Road, just east of the intersection with Highway 43 was two and one-half or three feet deep from the ditch to half or three feet deep from the ditch to the road; that the black marks he observed on Highway 43 were made by application of brakes on deceased's pick-up truck, which marks are shown on defendant's exhibit (A) and plaintiff's exhibit (2); that these marks were continuous as they went from the embankment of Maple Road and across the road to the position of deceased's truck.

Witness, Robert J. Baird, a photographer, identified plaintiff's exhibits (3) and (4) as photographs taken by him at the scene of accident. Exhibit (3) was taken while he was standing 10 feet east of the east edge of the blacktop and a little south of the center of Maple Road. Exhibit (4) was taken while he was standing a little south of the center of Maple Road and six feet east of the edge of blacktop 43, both pictures are looking south along Highway

43 and they correctly reflect a driver's view to the south. Exhibit (4) shows a house located south of Maple Road on west side of Highway 43, a mailbox near the west side of Highway 43 and a private driveway leading to the house. The driveway is south of both the house and mailbox. This exhibit reveals some fence posts along the west side of Highway 43 and south of the driveway. Baird marked the fifth fence post (shown on the exhibit). He testified he measured the distance from the center of Maple Road south along the east edge of Highway 43 to a point opposite the fifth fence post which showed a distance of 428 feet; that the posts are about 12 feet apart. Witness also measured the distance from a point in the center of Maple Road to the driveway, which was 370 feet. He measured the width of the blacktop at the intersection and stated it was 20 feet wide. This measurement was made right in the center of Maple Road. Witness testified that he made certain observations while sitting in an automobile parked on Maple Road headed west, eight feet from the east edge of the blacktop 43 and that he could see the front end of an approaching north bound car when it was opposite the fifth fence post and could see all of the car when it had reached a position between the fourth and third post. He testified that the closer a car approached 43, going west on Maple Road, the farther south you could see on Highway 43. He gave it, as his opinion, that defendant's exhibit (E) was made from a point further east on Maple Road than plaintiff's exhibit (3), thereby making the vision to the south on Highway 43 shorter in distance.

A part of defendant's deposition was offered by plaintiff as admission against interest. In it defendant testified there was an embankment along the south side of Maple Road; that to the south was a field higher than the roadway which interferes with view to the south along Highway 43 as west bound traffic on Maple Road approaches the intersection. He testified he was driving a 1948 Dodge truck which was

20 feet long over all; that he observed deceased's pick-up truck had scraped the edge of the embankment on Maple Road at the intersection but did not know whether the marks were caused by the axle or wheel. He stated he knew Highway 43 was the main traveled throughfare and knew it was down grade where the curve intersects Maple Road. He gave this testimony:

"Q. Now do you have any judgment about where this black object which you later identified as the pick-up truck was when you first saw it? A. It would be north of the highway sign. * * *

"Q. All of his truck was north of the highway sign? A. Yes."

Plaintiff offered in evidence exhibit (6) which is a written statement signed by the defendant. In this exhibit defendant states that on November 3, 1958, about 10:10 a. m., he was driving his 1948 Dodge one and one-half ton truck west on Maple Road; that he pulled up to the intersection of that highway with Highway 43 and stopped right about the stop sign; that he looked both ways, north and south; that his view to the south was not clear and you can't see very far; that he didn't know how many feet. He stated he saw nothing in the way; that he wasn't in a hurry so he started out west across the road at a normal rate of speed, which couldn't have been very fast and stated he did not know if he looked back either north or south; that when the front of his truck had just gone over the hump, which is just west of the edge of the pavement on Highway 43, he got a glimpse out of the corner of his eye of a black object to the south on Highway 43; that he turned his head around to the south and got an impression of a man fighting his wheel; that he stopped as quick as he could and stepped on the running board of his truck and looked north on Highway 43 and saw no trucks so he ran around and over to this black truck which was right side up, about 3 or 4 feet back of the stop sign on the north side of Maple; that the

truck was headed southwest and in the ditch. In the statement, defendant said: "The only time I ever saw the other truck was the glimpse I got out of the corner of my eye."

Defendant's testimony is that he stopped his truck three or four feet east of the blacktop and looked both to the right and left; that thereafter he shifted gears to low and as he started up, looked both ways again; that the second time he looked he was about at the east edge of the blacktop highway; that he saw no traffic approaching and drove straight across the blacktop.

We are indebted to the attorneys for both appellant and respondent for the able briefs submitted to the court.

Appellant's first and principle assignment of error is that the trial court erred in overruling his motion for a directed verdict at the close of all of the evidence for the reason that plaintiff failed to make a submissible case.

■ In determining whether or not a submissible case was made on the theory of primary negligence we view the evidence from the standpoint most favorable to plaintiff and give to him the benefit of all reasonable inferences therefrom. Fenneren v. Smith, Mo.Sup., 316 S.W.2d 602, 606 [3]; Schmittzehe v. City of Cape Girardeau, Mo.Sup., 327 S.W.2d 918, 922 [2]; Bays v. Jursch, Mo.App., 340 S.W.2d 430, 433 [3]; Slaughter v. Myers, Mo.Sup., 335 S.W.2d 50, 51(1); Gray v. Williams, Mo.App., 289 S.W.2d 463, 464 [1]; Dugan v. Rippee, Mo.App., 278 S.W.2d 812, 815 [1, 2]; Capra v. Phillips Investment Co., Mo.Sup., 302 S.W.2d 924, 929 [1]; Highfill v. Brown, Mo.Sup., 340 S.W.2d 656, 658 [2, 4]; Herr v. Ruprecht, Mo.Sup., 331 S.W.2d 642, 645 [1].

■ It was the duty of plaintiff-respondent to establish her case by a preponderance, that is, the greater weight of the credible evidence. Where plaintiff's evidence only supports equally either of several inconsistent factual inferences, some of which result in a failure of proof, it is insufficient but if plaintiff's probative evidence justifies, although not strong enough to compel, more probable inference of defendant's actionable negligence, ·it should be sufficient for a submissible case. Thompson v. Jenkins, Mo.Sup., 330 S.W.2d 802, 804 [1, 2]. In this authority the court stated:

" 'Facts necessary to sustain a recovery in a civil case may be proven by circumstantial evidence, but the facts and circumstances proven must be such that the necessary facts to support a verdict may be inferred and must reasonably follow. Such evidence must exclude guesswork, conjecture, and speculation as to the existence of the necessary facts.' Schoen v. Plaza Express Co., Mo., 206 S.W.2d 536, 538 [2]; Gray v. Williams, Mo.App., 289 S.W.2d 463, 465 [2–4]; * * * 38 Am. Jur. 1032, § 333."

■ The credibility of witnesses and weight of evidence are for the jury, and it is only where there is complete absence of probative facts to support a verdict that an appellate court will interfere. Elliott v. Wescoat, Mo.Sup., 336 S.W.2d 649, 652 [4–7].

It is respondent's theory that defendant violated § 304.021 subd. 4, V.A.M.S.1949 as amended, in that defendant failed to see deceased Snider and failed to yield the right of way to him who was on a through highway, and that defendant entered the intersection at a time when Snider was approaching so closely as to constitute an immediate hazard; that to avoid striking defendant, deceased crossed Highway 43, swerved his pick-up off the road striking an embankment, and was thrown from his truck and killed.

Appellant's theory is that there was no negligence on part of defendant; that he stopped at the stop sign; looked and did not see anything coming from the south, and that there was nothing in sight for de-

fendant to see immediately prior to the time he started across the highway.

The real factual issue presented is whether or not an issue was made for the jury as to whether deceased's pick-up truck was in sight to the south immediately prior to the time defendant started across Highway 43 and approaching so closely as to constitute an immediate hazard.

§ 304.021, subd. 4 reads: "The driver of any vehicle shall stop as required by this section at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection on the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard. The state highway commission may erect stop signs at the entrance of any public road into a through highway."

Herr v. Ruprecht, Mo.Sup., 331 S.W.2d 642, involved an automobile collision at an intersecting highway as in the instant case. On page 647 [2–4] of the opinion the court stated:

"* * * The defendant properly asserts that the proof of negligence cannot rest upon guesswork, speculation, or conjecture and that the mere fact of collision is not sufficient to establish defendant's negligence. Miller v. Wilson, Mo.App., 288 S.W. 997, 999; Bates v. Brown Shoe Co., 342 Mo. 411, 116 S.W.2d 31, 33; Fritz (& Groh) v. St. Louis, I. M. & S. R. Co., 243 Mo. 62, 148 S.W. 74, 79. However, the fact that a collision occurred and the manner of its happening are evidentiary facts which must be taken into consideration in determining the sufficiency of the evidence, especially in this type of case where the essential question is whether the plaintiff's vehicle was 'approaching so closely on the through highway as to constitute an immediate hazard' and whether the defendant knew or should have known of such danger.

\* \* \* \* \* \*

"By the enactment of § 304.021, the general assembly intended to codify and establish the passage rights and duties of vehicle drivers in and at intersections in a variety of situations. There is a provision giving, generally, to the first one who enters an intersection the right of way over another approaching the intersection from a different highway, but that is not applicable to the facts of this case. Here the plaintiff was traveling on a 'through highway' and the defendant was on a 'public road' on which the state highway commission had erected 'stop signs' as authorized by the statute. This situation is specifically covered by paragraph 4 of § 304.021 quoted above. Defendant's statutory duty extended beyond stopping at the entrance to the intersection and giving preference to vehicles already in it. She was also required to yield the right of way to vehicles approaching the intersection so closely on the through highway as to constitute an immediate hazard. And defendant's duty to 'yield the right of way' existed not merely at the entrance and while she was stopped, but it continued with her into the intersection if and when it appeared (or reasonably should have appeared) to her that plaintiff's approach had then created an immediate hazard; this is true, at least to the extent that she might then be able to stop or slacken and let the other car pass. See Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 582; James v. Berry, Mo.App., 301 S.W.2d 530. In other words, the duty to 'yield' may not be wholly disregarded once a motorist gets the front end of his vehicle into an intersection with a through highway."

In the case of an automobile operating upon the highways of this state there is imposed upon the driver a continuous statutory duty to exercise the highest degree of care at all times and all places thereon to keep a lookout for persons thereon and in every respect. Faught v. Washam, 365 Mo. 1021, 291 S.W.2d 78, 82 [4]; Watkins v. West, Mo.App., 297 S.W.2d 568, 571 [4–6]; Frandeka v. St. Louis Public Service Co., Mo.Sup., 234 S.W.2d 540, 548 [15, 16]; Major v. Davenport, Mo.App., 306 S.W.2d 626, 630.

■ It was the duty of appellant in the instant case to keep a careful watch ahead for other vehicles on Highway 43 and to fulfill this duty he was required to look in such an observant manner as to enable him to see what a person in the exercise of the highest degree of care for the safety of himself and others would be expected to see under similar circumstances. Faught v. Washam, supra, page 82 [5].

In Schmittzehe v. City of Cape Girardeau, Mo.Sup., 327 S.W.2d 918, 923 [4, 5] the court stated:

"It is, of course, the duty of a motorist entering an intersection to exercise the highest degree of care and to maintain a careful and vigilant lookout ahead and laterally ahead. He cannot drive blindly into the intersection, or rely solely on the fact that he has the right-of-way. Witt v. Peterson, Mo.Sup., 310 S.W.2d 857 [1, 3]. Neither does he fulfill the duty imposed upon him by stopping at a stop sign and then driving into the intersection without making proper observations to determine that there is no cross traffic in or so near to the intersection as to constitute an immediate hazard. 60 C.J.S. Motor Vehicles § 359c. * * * While she had the duty to maintain a look-out ahead and laterally ahead she could not keep an uninterrupted watch in two directions, she was not required to look constantly to one side, and she did not need to keep turning her head from side to side. 60 C.J.S. Motor Vehicles § 287. * * *"

■ In the instant case plaintiff was traveling on a through highway going in a northeasterly direction and down grade as the highway approached the intersection with a country road, Maple Road. Defendant was traveling west on Maple Road on which the State Highway Commission had erected a stop sign, which required west bound traffic on Maple Road to yield the right of way at the intersection. The stop sign admittedly was erected on the north side of Maple Road about 31 or 32 feet, east of Highway 43. This situation is specifically covered by paragraph 4 of § 304.021. Defendant was required to yield the right of way to vehicles approaching the intersection on Highway 43 so closely as to constitute an immediate hazard. His duty to yield the right of way exists merely not at the entrance and while he was stopped but it continued with him into the intersection if and when it appeared (or reasonably should have appeared) to him that plaintiff's approach created an immediate hazard. Herr v. Ruprecht, Mo.Sup., supra.

The fact that a collision occurred and the manner of its happening are evidentiary facts which must be taken into consideration in determining the sufficiency of the evidence, especially in this type of case where the essential question is whether plaintiff's vehicle was approaching so closely on the through highway as to constitute an immediate hazard and whether the defendant knew, or should have known, of such danger. Herr v. Ruprecht, supra; Frandeka v. St. Louis Public Service Co., supra.

It was the duty of appellant in the instant case to keep a careful watch ahead for other vehicles on Highway 43 and he was required to look in an observant manner so as to enable him to see what a person in the highest degree of care for the safety of himself and others would be expected to see under similar circumstances. Faught v. Washam, supra, 291 S.W.2d at page 82 [5].

■ Appellant did not fulfill the duty imposed upon him by stopping at the stop sign and then driving into the intersection without making proper observations to determine there was no cross traffic in or near to the intersection so as to constitute an immediate hazard.

Under the evidence the jury might have found that appellant, as he approached the intersection, stopped at the stop sign, which was 31 or 32 feet from the east edge of Highway 43.

In appellant's exhibit (6) he stated that he stopped at or near the stop sign. While it is undisputed that appellant looked both to the north and south while stopped at the stop sign the jury could well have found that from that distance from Highway 43, because of obstructions, to-wit, an embankment, appellant might not have been in a position to safely cross Highway 43 without further looking to the south before he crossed it. While appellant testified that as he started upon the blacktop, he looked both to the north and south for approaching traffic, yet, in his written statement, made a few days after the accident, he stated that he did not know whether he ever looked after he started up from the stop sign. There was evidence offered by respondent that one in a motor vehicle stopped 8 feet from the intersection of Maple Road and Highway 43 could have observed traffic 428 feet to the south and witnesses testified that the closer west bound traffic approached the east side of 43, the further to the south their vision would be of approaching traffic.

There was evidence given by witness Parr that as he was going to the church mailbox, located some 425 feet east of Highway 43 and north of Maple Road, he glanced up toward the intersection and saw deceased's pick-up coming north on Highway 43 and, at the same time, had defendant's truck in his view; that when he saw the deceased's truck come into view appellant was in the process of crossing Highway 43. He stated that his view to the south on Highway 43 from where he was standing was obstructed by the bank on the south side of Highway 43 and shrubbery along the south side of the church property on Maple Road and his vision was limited to 100 feet so that at the time he saw the trucks they must have been within 100 feet or closer of each other. He testified that there was just a fraction of time after he observed deceased's truck before it swerved to the right and went off of the edge of Highway 43.

The Highway Patrolman investigated the accident some thirty minutes after it happened. He observed black marks on Highway 43 starting some 110 feet south of the intersection on the blacktop road and gradually turning to the right, striking the embankment on Maple Road just at the intersection and leaving marks across that road to the truck deceased was driving which was headed south on the church property near the stop sign and in the ditch on the north side of Maple Road. He gave it, as his opinion, that these black marks were made by the application of brakes on the truck driven by deceased. One witness testified that at the place the black marks started on the highway the east wheel was about a foot from the east edge of the blacktop on the highway, so the jury could have inferred from these physical facts offered that the deceased applied his brakes as he approached the intersection on a downgrade and left marks on the road beginning 110 feet south of the highway and going 150 feet to the wheels on the truck as it stopped on the northeast corner of the intersection. We think, likewise, that from the facts of the marks left on the road, the jury could reasonably have inferred that deceased turned his truck to the right in approaching the intersection and put on his brakes to avoid collision with appellant's truck, which was, at the time, crossing the highway.

It is true that appellant testified that he never observed the deceased's pick-up coming north until he glanced out of the corner of his eye after his truck had cleared the highway on the west side. He stated that when he first observed deceased's truck it was north of the stop sign on Highway 43 and deceased was fighting his wheel. The evidence shows that the "stop sign" referred to by appellant was 130 feet south of the intersection. Appellant says when he first observed this truck it was completely north of that sign. So, from the testimony, appellant first observed deceased's truck about the same time that witness Parr observed it.

Parr testified that the deceased didn't turn his pick-up to the right until shortly after it came into his view, which was only 100 feet south of the intersection. Exhibit (6), the written statement signed by appellant, stated that appellant first saw deceased's truck when his front wheels passed over the bump on the west side of Highway 43. The evidence is that where the blacktop on the west side of 43 connects with the gravel road there was a rough place. Witness Parr testified that he was unable to say just what distance there was between the two trucks when they first came into his vision but from the time he glanced up it was a matter of split seconds before the accident.

■ Under the evidence it was not shown at what speed the deceased's pick-up was traveling at the time of the accident, but, under the law, it is presumed that he was not violating the speed limit of 65 miles per hour. Lyon v. Southard, Mo.Sup., 323 S.W.2d 785, 787 [3, 4].

There was evidence that had deceased been traveling the speed limit, to-wit, 65 miles per hour, he would have been going 95 feet per second, and, from the evidence offered by plaintiff, had defendant looked when he was 8 feet from the intersection, he could have seen approaching traffic from the south a distance of 428 feet, approximately 4½ seconds before deceased's truck would have reached the intersection. And since deceased applied his brakes 110 feet south of the intersection his truck would have probably been a longer time than 4½ seconds in reaching the intersection from the time it could have been observed.

■ In appellant's brief, page 30, he states: "Defendant's duty to keep a look-out arose before he entered and while he was entering onto the intersection." Appellant says that plaintiff's evidence is silent as to whether defendant looked. However, defendant, in his written statement which was in evidence as exhibit (6), stated that he did not remember whether he looked after he stopped at the stop sign. Of course,

defendant, in the trial, made statements contradictory to this alleged statement, yet, the jury are the judges of the credibility of the testimony and what to believe and they could disregard the defendant's testimony at the trial as to where he was at the time he looked. We are of the opinion that the question of whether or not the Snider pick-up truck was in sight to the south immediately prior to the time defendant started across Highway 43 and approaching so closely as to constitute an immediate hazard was a question for the jury under the evidence offered and we find that a submissible case was made.

Under point II, appellant complains of the giving of Instruction No. 1 at the request of plaintiff. Three reasons are assigned under this alleged error. First, it is contended that the instruction erroneously required defendant to stop at the stop sign under any and all circumstances, whereas the statute confines such duty only to the time when a vehicle on a through highway is approaching so closely as to constitute immediate hazard.

Instruction No. 1 reads: "The court instructs the jury that under the law of Missouri Highway 43 was a through highway, there was a stop sign on the east side thereof on Maple Road, and under the law of this state the operator of a motor vehicle traveling west on Maple Road was required to stop before entering onto or crossing Highway 43, and having stopped at the entrance to said intersection was required to yield the right of way to a vehicle on Highway 43 which had entered the intersection or which was approaching so closely thereto as to constitute an immediate hazard.

"You are therefore instructed that, whether or not you find the defendant stopped for a stop sign on the east side of the intersection of Highway 43 and Maple Road, if you find that as the defendant moved forward and entered or was about to enter said intersection plaintiff's deceased husband was driving his pick-up truck in a northerly direction along High-

way 43 and was approaching so closely as to constitute an immediate hazard of collision between defendant's truck and that of deceased, then you are instructed that it was the duty of the defendant to yield the right of way at said "intersection to the deceased, and if you further find from the evidence that defendant came into said intersection in front of the deceased and did not yield the right of way at said intersection to the deceased, and in so failing to yield the right of way, if you so find, the defendant was negligent, and that such negligence, if you so find, directly caused the deceased to run off the highway and be thrown out of his vehicle and killed, then your verdict must be for the plaintiff and against the defendant."

To support this contention Garrison v. Ryno, Mo.Sup., 328 S.W.2d 557, 566 is cited. This case states that: "The duties to be performed under Section 304.021, subd. 4 RSMo 1949, V.A.M.S., are carefully confined and limited to a particular hypothesized situation related to the surrounding facts and circumstances, namely, driving onto the traveled portion of the through highway without *stopping at a time when the automobile in which respondent was riding was approaching so closely on the through highway as to constitute an immediate hazard.* This saving clause, to be found both in the criticized second paragraph (which accurately states the law on the subject), and in the verdict-directing fourth paragraph (where the law is tied in with the facts), neutralizes appellants' criticism of the instruction. Because of the 'so closely' clause respondent's right to a favorable verdict is predicated upon a jury finding of facts which constitute negligence. By the 'so closely' clause the jury is obliged to find the issue of negligence *vel non* according to the statutory definition, upon a consideration of a certain hypothesized set of surrounding facts and circumstances, and is not directed to return a verdict for respondent automatically upon a mere finding of failure to look, stop or yield."

We think this authority completely negatives appellant's contention. We held in Douglas v. Whitledge, Mo.App., 302 S.W.2d 294, 301 [5] that the function of a verdict-directing instruction is to inform the jury of the essential facts they are to decide. Randall v. Steelman, Mo.App., 294 S.W.2d 588, 593 [3, 4]; Feldman v. Lewis, Mo.App., 338 S.W.2d 364, 367 [1]; Kimmich v. Berry, Mo.Sup., 319 S.W.2d 546, 548 [1].

The question of whether or not defendant stopped at the stop sign was not an issue in the case and was not a fact to be decided by the jury. There is no merit in the first attack on this instruction.

The second attack against this instruction is that it required defendant to yield the right of way regardless of whether or not defendant could see decedent's truck before he entered onto Highway 43 and failed to hypothesize the facts relative to defendant's limited view to the south of the intersection.

In respondent's argument she states: "The underlying factual issue for the jury was whether or not deceased Snider's pick-up truck was in sight to the south immediately prior to the time defendant started across Highway 43 and approaching so closely as to constitute an immediate hazard."

The purpose of a verdict-directing instruction is to make clear to the jury the essential fact issues they are to decide. Hooper v. Conrad, 364 Mo. 997, 260 S.W.2d 496, 500; Feldman v. Lewis, Mo.App., 338 S.W.2d 364, 367 [1]. In the last cited authority the court stated:

"As the Supreme Court has repeatedly stated, the purpose of a verdict-directing instruction is to make clear to the jury the essential fact issues which they are called upon to decide, and where the evidence relating to such issues is conflicting and divergent, some of it supporting and other portions opposing the particular verdict, the instructions should, in that event, hypoth-

esize, either by express recital or by reference to other instructions, the facts essential in law to support the verdict, whether it be to direct or to defeat a right of recovery. Kimmich v. Berry, Mo., 319 S.W. 2d 546; Ferguson v. Betterton, 364 Mo. 997, 270 S.W.2d 756; Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496."

In Devoto v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 66, 72 [6], the court quoted from Stakelback v. Neff, Mo. App., 13 S.W.2d 575, 577, a case involving a collision of two automobiles at the intersection of streets and stated: