Verne Albert DAVIS, Appellant,

v.

William M. HILTON, Respondent.

No. 23679–80.

Kansas City Court of Appeals.

Missouri.

April 1, 1963.

August V. Spallo and Joseph P. Spallo, Kansas City, for appellant.

Lester J. Vandever, Deacy & Deacy, Kansas City, for respondent.

CROSS, Judge.

This is an action for damages for personal injuries plaintiff claims he sustained in a collision between an automobile he was driving and one operated by the defendant. The trial was to a jury which returned a verdict in favor of defendant. Plaintiff appeals from the adverse judgment.

■ Although plaintiff's petition contains a prayer for judgment in the amount of $20,000.00, his counsel, in closing argument, asked the jury to return a verdict for plaintiff in the amount of $3500.00. Plaintiff's good faith demand was thereby reduced from the amount prayed in his petition to the sum of $3500.00. Daly v. Schaefer, Mo.App., 331 S.W.2d 150. Therefore, the amount presently in controversy is within the monetary jurisdiction of this court. V.A.M.S.Const. Article V, Section 13.

Plaintiff confines the scope of review in this appeal to one question: whether the trial court erred in giving Instruction No. 5, at the request of defendant, submitting the affirmative defense of contributory negligence on the part of plaintiff. In present-

ing his single point plaintiff has seen fit to file only a partial transcript. The evidence is not fully set out therein and is not in question and answer form. The only facts before us, as reflected by the record, are contained in a short narrative entitled "The Evidence", which plaintiff has incorporated in the transcript.

From the narrative in the transcript and from plaintiff's brief we learn that prior to the collision plaintiff was traveling westbound on Highway 169 and the defendant was traveling eastbound on the same highway, both parties approaching the intersection of Highway 169 with Highway 71 at Riverside, Missouri. At that intersection, where Highway 71 runs north and south, plaintiff made a left turn when the traffic light was green for east-west travel, and headed south on Highway 71. Although Highway 169 west of the intersection is *generally* a two lane highway with only one lane for eastbound travel, it widens from one lane eastbound to two lanes eastbound at a point "quite some distance west of the intersection". It is plaintiff's evidence that when he was making his left turn, the defendant, who had been traveling in the inside eastbound lane of Highway 169, "switched" to the outside lane when he was 6 or 7 car lengths from the intersection, drove around some cars which were stopped in the inside lane, proceeded into the intersection and drove his automobile into plaintiff's. It is defendant's evidence that when he reached the point west of the intersection where Highway 169 widens from one lane eastbound to two lanes eastbound he remained in the outside, or southernmost portion of Highway 169 as he approached the intersection of Highway 71; that he never at any time was in the inside (northernmost) eastbound lane of Highway 169 from the point where it widens into two lanes for eastbound travel; that as he so traveled into the intersection, plaintiff turned suddenly in front of him; and, that he applied his brakes but was unable to avoid the collision.

The case was tried and submitted on behalf of plaintiff under the theory of primary negligence on the part of defendant, in suddenly switching from the inside to the outside lane of Highway 169, and running into plaintiff's vehicle as he was making the left hand turn. Plaintiff's verdict-directing Instruction No. 1 is essentially a hypothesization of the evidence given on his behalf as above set out.

It is plaintiff's complaint that the trial court erred in giving defendant's Instruction No. 5 because "the instruction failed to locate the lane of travel of respondent's (defendant's) vehicle on Highway 169 as respondent approached the intersection of 169 and 71 highways". Amplifying the point, plaintiff says that "Respondent's lane of travel was an essential factor in the case and hotly contested and failure to include the lane of travel in the instruction permitted the jury to find that appellant was required to keep a lookout for respondent's vehicle in the inside lane of Highway 169 when such vehicle could not present a hazard to appellant". The text of Instruction No. 5 reads as follows:

"The Court instructs the jury that if you believe that at the time and place mentioned in evidence, the plaintiff, Mr. Davis, was driving a Chevrolet automobile in a westerly direction on Alternate U. S. Route 169, and if you find that the defendant was operating his Pontiac automobile in an easterly direction on said Route and that defendant was proceeding at a speed of at least 30 miles an hour and approaching the intersection of Route 71, and if you further find after plaintiff entered the intersection of said Route 169 and Route 71 the plaintiff turned his vehicle to the left and across the center line of Route 169 and into the direct and immediate path of defendant's automobile, if so, and that at the time plaintiff so turned his automobile the automobile of defendant was so close to said intersection as to constitute an immediate hazard of collision, if you so find, and if

you find that such action upon the part of the plaintiff in so turning was negligent, if so, and if you further find that plaintiff failed to exercise the highest degree of care to keep and maintain a lookout for eastbound traffic and was thereby negligent, and such negligence of plaintiff in either of said regards, if so, directly caused or contributed to cause the collision and plaintiff's injuries, if any, then you are instructed that the plaintiff cannot recover in this case and your verdict shall be in favor of the defendant, Mr. Hilton, and this is true even though you may also find that defendant was negligent as submitted in the other instructions given you herein".

The quoted instruction is based on and is declaratory of (1) plaintiff's statutory duty, in making the left turn shown in evidence, to "yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard"; (Section 304.021(3), V.A.M.S.) and (2) his duty to maintain a constant and vigilant lookout, particularized in the instruction as the duty "to exercise the highest degree of care to keep and maintain a lookout for eastbound traffic". If factually supported, the instruction is a correct and proper statement of the law.

It is plaintiff's contention that since defendant's whole case was predicated on the theory that defendant was "always in the outside lane, never in the inside lane", and did not "swing into the outside lane * * * six or seven car lengths west of the intersection", Instruction No. 5 should have contained those facts as a hypothesis prerequisite to a finding by the jury that plaintiff was contributorily negligent. Plaintiff urges that the general hypothesis contained in the instruction erroneously permitted the jury to find him contributorily negligent under the facts constituting *his own* theory of the case, to-wit, that as he started to make his left turn, defendant was still in the inside lane behind some cars which had stopped in that lane, but that defendant swung out into the outside lane six or seven car lengths back of the intersection and proceeded into the intersection and into collision with plaintiff's vehicle. Plaintiff submits that "under these circumstances he was entirely justified in making his left turn to go through the intersection". Plaintiff further complains of the instruction that it led the jury to believe that "no matter which lane respondent (defendant) was in he could present an immediate danger of a hazard and that appellant was required to watch for cars coming from the west on Highway 169 no matter where they might be on the highway".

In order that plaintiff's appeal theory be thoroughly understood, we indulge in one more quotation from his argument, as follows: "The jury could very well have believed that respondent was still in the inside lane 6 or 7 car lengths from the intersection, as appellant contends and yet under this instruction as drawn still find the appellant guilty of contributory negligence. Surely this is not the law. Does the law require that a person wanting to make a left turn, when there are cars stopped in the inside lane facing him, wait before proceeding until other cars in that same lane come to a stop behind the stopped cars? Does he have to assume that the oncoming cars will swing into the outside lane when they are six or seven car lengths from the intersection? If that is what the jury wants to believe the law is, then this instruction lets them believe it".

From all the foregoing it is apparent that plaintiff concedes the propriety of Instruction No. 5 as it relates to his duty to keep a lookout and yield to cars in the outside lane. We are here concerned only with the question of plaintiff's duty of care in the situation that existed *according to his own theory and evidentiary version of the case,* as such question relates to the sufficiency of the hypothesization of facts in the instruction.

According to plaintiff's testimony, defendant swung out from the inside lane at a point 6 to 7 "car lengths" back of the intersection. Since plaintiff chose to use the factor of "car length" as a unit of measure, we deem it appropriate and within our judicial prerogative to translate the distance estimated by him as "6 to 7 car lengths" into terms commensurate with the standard unit of measure—the linear foot. In Nored v. St. Louis Public Service Company, Mo.Sup., 319 S.W.2d 608, the Supreme Court stated that it may not take judicial notice of a *particular* automobile's length but that "we do know that its length did not exceed 20 feet and that the overhang of a street car is about 2 feet". And, in Jones v. Fritz, Mo.App., 353 S.W.2d 393, the court said, "But, since we need not and should not pretend ignorance concerning matters of common knowledge * * * we may and do know judicially that it is several (certainly no less than 6) feet from the front end of a Ford automobile, of the vintage driven by instant plaintiff, to the driver's seat". The court ruled to like effect, in Bauman v. Conrad, Mo.App., 342 S.W.2d 284. But, more to the point, and in reference to a matter not involving the dimensions of a *particular* "car", the Supreme Court has clearly held that courts may take judicial notice of units of distance that have come into general use, including "car lengths". In Lueders v. St. Louis and San Francisco Railroad Co., 253 Mo.Sup. 97, 161 S.W. 1159, the Supreme Court said, "Since railways measure the distance from mile to mile by the number of telegraph poles, directing public attention to the system and its resulting information by painting upon the poles, and a nomenclature has come into general use in which 'telegraph poles' and 'car lengths' are used as units of distance, the courts may assume, without subjecting themselves to the imputation of arrogance, that a telegraph pole ordinarily represents a distance of as much as 150 feet;". Under the foregoing authority, and in the exercise of our judicial prerogative, we assume, for the purposes of this case, that "6 or 7 car lengths" would be *at least* the distance of 100 feet. Our assumption is based on the fact that automobiles are daily observed in great numbers by the general public, and that their dimensions are a matter of such common knowledge and understanding that "car length" has become a standard and universally used unit of measure to approximate distance.

Thus, even if defendant drove his car from the inside lane to the outside lane in the manner and at the place plaintiff says he did, it is evident that defendant traveled at least 100 feet in the outside lane directly toward the intersection immediately prior to the collision. We believe that it is immaterial, on the question of the submissibility of plaintiff's contributory negligence to the jury, whether defendant was in the outside lane continuously, or entered it from the inside lane 100 feet back of the intersection. In either case, plaintiff had the opportunity to look out for and see defendant's car in the outside lane throughout the entire interval of time it took defendant to travel the stated minimum distance of 100 feet, and to act accordingly. Furthermore, there is ample evidence to support a finding by the jury that as plaintiff made his turn to the left and into the path of defendant's automobile, that vehicle was so close to the intersection as to constitute an immediate hazard of collision.

It must be remembered that plaintiff had the incumbent duty, as a motorist, to exercise the highest degree of care at the time and place in question and to keep a constant and vigilant lookout for other vehicles. Furthermore, he was *specifically* charged by the statute to yield the right of way to any vehicle "approaching from the opposite direction which is so close to the intersection as to create immediate hazard". The record discloses nothing in the nature of an obstruction anywhere in the vicinity of the intersection that would obscure plaintiff's view of defendant's automobile during the entire time it traveled the minimum distance of 100 feet in the outside lane, which,

by plaintiff's admission, was "clear". The record reveals no exculpating fact or circumstance to excuse plaintiff from discovering the approach of defendant in time to have yielded the right of way as the law requires. Even if defendant was originally in the inside lane, as plaintiff claims, the evidence before us fails to show that plaintiff did not or could not see the movement of defendant's automobile to the outside lane before it traveled the final 100 feet, into the intersection. Whether plaintiff failed to look at a time when it would have been possible to look effectively, or failed to observe defendant's vehicle approaching is not clear from the evidence. In either event, the jury could reasonably find that plaintiff's conduct was negligent. See Major v. Davenport, Mo.App., 306 S.W.2d 626. We further note that there is no fact or circumstance in evidence to show that defendant did not have the right to change his course from the inside lane and proceed to the intersection in the outside lane so long as he could do so in the exercise of the highest degree of care.

■ Plaintiff has suggested, as we have noted, that it was not his duty "to watch for cars coming from the west on Highway 169 no matter where they might be on that highway", and that he did not have to "assume that the oncoming cars will swing (from the inside lane behind stopped cars) into the outside lane when they are 6 or 7 car lengths from the intersection". Plaintiff's suggested concept of the law is unrealistic, in view of the stringent obligation of duty incumbent upon a motorist operating an automobile on the public highway, particularly when entering an intersection to make a left turn in front of oncoming traffic. "In the case of an automobile operating upon the highways of this state there is imposed upon the driver a continuous statutory duty to exercise the highest degree of care at all times and all places thereon to keep a lookout for persons thereon *and in every respect*". (Our italics.) Snider v. King, Mo.App., 344 S.W.2d 265; Faught v. Washam, 365 Mo.Sup. 1021, 291 S.W.2d 78.

■ For all the foregoing reasons it is necessarily our ruling that Instruction No. 5 is not erroneous. To rule otherwise would amount to a declaration that *as a matter of law* plaintiff was not contributorily negligent under the state of facts shown by his evidence. This we can not do under the record before us. The issue was for the jury under the evidence of both parties and was submitted to them by appropriate hypothesis.

Plaintiff relies on three cases: Hooper v. Conrad, 364 Mo.Sup. 176, 260 S.W.2d 496; Carlson v. St. Louis Public Service Co., Mo.Sup., 358 S.W.2d 795; and Snider v. King, Mo.App., 344 S.W.2d 265. We are urged to apply the principle stated in Hooper v. Conrad, supra, that "Where the evidence presents two or more divergent sets of essential facts, under one or more of which plaintiff would be entitled to recover and under one or more of which he would not, then a verdict-directing instruction or instructions given in his behalf should hypothesize, either by recital or by reference to other instructions, the facts essential in law to support the verdict. In like manner, verdict-directing instructions in behalf of the defendant should recite on their face or by reference to other instructions any essential fact or facts shown or not shown which will defeat plaintiff's right of recovery". The quoted statement is not applicable in the present case because, although divergent sets of facts are shown in evidence by the two parties in respect to the position and movement of defendant's vehicle, *prior to the time it traveled the last 100 feet in the outside lane,* there is a submissible issue of plaintiff's contributory negligence under *either* version of the evidence.

The Carlson and King cases are not persuasive on the question here involved. The former is a case submitted entirely on the humanitarian doctrine. No issue of contributory negligence was considered. The King case is not in point because the fact situation affecting the issue of plaintiff's contributory negligence was materially different from the facts in this case. There

was uncontradicted evidence in King that an embankment obscured the plaintiff's view of the intersecting highway. "Each case must be ruled by its own particular facts". Carpenter v. Kessner, Mo.App., 330 S.W. 2d 270.

The judgment is affirmed.

All concur.